## GAUGHF PROPERTIES, L.P., BALAZS VENTURES, LLC, A PARTNER OTHER THAN THE TAX MATTERS PARTNER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 18298–07.          Filed September 10, 2012.

A partnership entered a complicated series of transactions involving currency options and stock trades. Two LLCs and an S corporation also took part in the transactions. All four entities were formed in 1999 and were owned either directly or indirectly by H and/or W. The transactions were intended to yield losses that would offset substantial unrealized gains in stock owned by H by inflating outside basis in the partnership. H and W were indirect partners of the partnership but did not list certain information identifying themselves as partners on the partnership's 1999 tax return. R was in possession of certain information identifying H and W as partners which R had obtained when certain forms were filed with him on behalf of the four entities in 1999. R possessed additional identifying information which he had obtained as a result of a summons issued to the law firm which had helped H and W complete the transactions. However, the identifying information was not furnished to R in accordance with certain requirements of sec. 301.6223(c)–1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6784 (Mar. 5, 1987). A notice of final partnership administrative adjustment (FPAA) was issued in March 2007. P claimed that the statutory period for assessment was closed at the time the FPAA was issued, while R made various arguments that the statutory period for assessment remained open. This issue was separated from the remaining issues for trial. *Held*: The statutory period for assessing tax attributable to partnership items was still open under I.R.C. sec. 6229(e) with respect to H and W at the time the FPAA was issued. *Held, further*, the doctrine of estoppel does not preclude R's asserting that the statutory period for assessment was open with respect to H and W.

*David De Coursey Aughtry* and *William E. Buchanan*, for petitioner.

*John Aletta*, *William Franklin Castor*, and *Edsel Ford Holman, Jr.*, for respondent.

### OPINION

GOEKE, *Judge*: On March 30, 2007, respondent mailed a notice of final partnership administrative adjustment (FPAA) to the tax matters partner (TMP) for Gaughf Properties, L.P.

(Gaughf Properties), concerning the tax year ended (TYE) December 27, 1999. The FPAA reflected respondent's determination that Gaughf Properties failed to recognize $4,455,000 in gross income resulting from the expiration of a currency option (described further *infra*). Some issues in the case have been separated for purposes of trial and opinion. The issues for decision are: [1]

(1) whether, on March 30, 2007, the statutory period for assessing tax attributable to partnership items was open under section 6229(e)[2] with respect to the Gaughfs. We hold that it was; and

(2) whether, under the doctrine of estoppel, respondent should be precluded from asserting the statutory period for assessing tax attributable to partnership items was open on March 30, 2007, with respect to the Gaughfs. We hold the doctrine of estoppel does not preclude respondent's assertion.

## Background

Gaughf Properties was a limited partnership formed under South Carolina law on September 29, 1999, and was terminated before the timely filing of the petition on August 15, 2007. At all relevant times the Gaughfs have been married and have resided in South Carolina.

### 1. *Formation of the Entities Involved*

During 1999 KPMG persuaded the Gaughfs that they should participate in a series of complicated stock and option transactions (plan) through the Chicago office of a national law firm, Jenkens & Gilchrist (J&G). On the advice of J&G and KPMG, the Gaughfs asked their attorney, Maurice Holloway, to form four entities the Gaughfs were told they needed to complete the plan.

Gaughf Enterprises, LLC (Gaughf Enterprises), was a single-member limited liability company formed under South Carolina law on September 22, 1999, and was wholly owned

---

[1] At trial and on brief respondent asserted that the statutory period for assessment is open under I.R.C. sec. 6501(e)(1)(A) because Andrew and Nan Gaughf (Gaughfs) omitted substantial gross income from their tax return. In the light of the recent U.S. Supreme Court decision in *United States v. Home Concrete & Supply, LLC*, 566 U.S. ___, 132 S. Ct. 1836 (2012), respondent now concedes this argument.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

by Mr. Gaughf. As such, during 1999 Gaughf Enterprises was a disregarded entity for Federal income tax purposes. On September 27, 1999, Mr. Holloway filed a Form SS–4, Application for Employer Identification Number, on behalf of Gaughf Enterprises with the Entity Control unit at respondent's Service Center in Atlanta, Georgia. This Form SS–4 identified Gaughf Enterprises as a disregarded entity.

Balazs Ventures, LLC (Balazs Ventures), was a single-member limited liability company formed under South Carolina law on September 22, 1999, and was wholly owned by Mrs. Gaughf. As such, during 1999 Balazs Ventures was a disregarded entity for Federal income tax purposes. As with Gaughf Enterprises, on September 27, 1999, Mr. Holloway filed a Form SS–4 on behalf of Balazs Ventures with the Entity Control unit at respondent's Service Center in Atlanta, Georgia. This Form SS–4 identified Balazs Ventures as a disregarded entity.

On September 29, 1999, Mr. Gaughf, acting on behalf of Gaughf Enterprises, and Mrs. Gaughf, acting on behalf of Balazs Ventures, executed a limited partnership agreement for Gaughf Properties. The limited partnership agreement listed Gaughf Enterprises and Balazs Ventures as the only partners in Gaughf Properties. Also on September 29, 1999, a Certificate of Limited Partnership for Gaughf Properties was filed with the secretary of state's office for the State of South Carolina and a "Certificate of Existence, Limited Partnership" was issued. On October 1, 1999, Mr. Holloway filed a Form SS–4 on behalf of Gaughf Properties with the Entity Control unit at respondent's Service Center in Atlanta, Georgia.

On September 30, 1999, Bodacious, Inc. (Bodacious), was organized as a corporation under South Carolina law. Mr. Gaughf owned 100% of Bodacious and was its president. For tax year 1999 Bodacious filed an election to be classified as a subchapter S corporation. On October 1, 1999, Mr. Holloway filed a Form SS–4 on behalf of Bodacious with the Entity Control unit at respondent's Service Center in Atlanta, Georgia.

Each Form SS–4 filed by Mr. Holloway stated that it was filed on account of the start of a new business. Each entity listed the Gaughfs' personal address in South Carolina as the entity's mailing address on its Form SS–4. The Forms SS–

4 for Gaughf Properties, Gaughf Enterprises, and Bodacious also: (1) listed Mr. Gaughf as the "principal officer, general partner, grantor, owner, or trustor"; (2) provided Mr. Gaughf's Social Security number; and (3) were signed by Mr. Gaughf.[3] The Form SS–4 for Balazs Ventures listed the same information for Mrs. Gaughf.

The filing of the Forms SS–4 to obtain employer identification numbers was part of Mr. Holloway's standard procedure in forming entities for his clients. Other than the Forms SS–4, Mr. Holloway did not file any other documents with the Internal Revenue Service (IRS) on behalf of the Gaughfs or entities related to them.

2. *Laying the Groundwork To Offset Gains in Stock Owned by Mr. Gaughf*

Per an investor profile prepared by J&G for Mr. Gaughf, J&G contemplated increasing the basis in Gaughf Properties through a "Section 754 step up in the partnership" in order to offset unrealized gains Mr. Gaughf had in stock he owned in Quanta Services, Inc. (Quanta).[4] J&G charged the Gaughfs $180,000 for its assistance with the plan.

Investment accounts with Deutsche Bank BT Alex. Brown, LLC (a division of Deutsche Bank Subsidiaries, Inc., and BT Alex. Brown, LLC, which are indirect subsidiaries of Deutsche Bank), were set up for Gaughf Enterprises, Gaughf Properties, and Bodacious to complete the plan. On November 24, 1999, $90,000 was deposited into Gaughf Enterprises' account. On November 29, 1999, Gaughf Enterprises entered into two currency option transactions with Deutsche Bank regarding the Japanese yen, consisting of a long and a short currency option. The termination date for these options was December 20, 1999. The stated premium for the long cur-

---

[3] Above his signature on the Form SS–4 for Gaughf Properties, Mr. Gaughf was identified as "Andrew Jackson Gaughf, Jr., Member of Gaughf Enterprises, LLC General Partner of Gaughf Properties, L.P."

[4] The investor profile prepared by J&G stated that Mr. Gaughf—

has gain in Quanta stock that has not yet been sold so it is likely that we will be doing the Section 754 step up in the partnership, however, it is possible that stock price will rise quickly and client will need to sell suddenly. We concluded that client would keep the stock out of the partnership for the first 20 days, and if not sold during that period it would be contributed to the partnership for the 754 step up. If the stock must be sold in the first 20 day period it will quickly be put into the S-corp and be sold from there.

rency option was $4.5 million, and the stated premium for the short currency option was $4.455 million.

On November 30, 1999, Gaughf Enterprises transferred the currency options to Gaughf Properties as a contribution to capital. On the same date, $45,000 (representing the net premium for entering into the currency options) was transferred from the Gaughf Enterprises account to Deutsche Bank to pay for the options. The $45,000 remaining in Gaughf Enterprises' account was then transferred on November 30, 1999, to Gaughf Properties' account as a contribution to capital. On the same date, Mr. Gaughf executed an agreement between Gaughf Enterprises and Bodacious under which $900 of the $45,000 contributed to Gaughf Properties from Gaughf Enterprises would instead be deemed to be a contribution from Bodacious to Gaughf Properties.

On December 20, 1999, the currency options held by Gaughf Properties terminated according to their terms. According to a legal opinion issued to Mr. Gaughf by J&G, Mr. Gaughf's [5] basis in Gaughf Properties "after the contribution of the [currency] Options should include the cost of the Long Option contributed, without adjustment for the Short Option".

On December 27, 1999, Gaughf Enterprises assigned its general and limited partnership interests in Gaughf Properties to Bodacious, and Balazs Ventures assigned its general partnership interest in Gaughf Properties to Bodacious, retaining its limited partnership interest. According to the written assignments of the interests, the assignments were made to Bodacious as a substitute general partner of Gaughf Properties, not as an assignee. On the same date, the Gaughfs executed a Liquidation Agreement on behalf of Bodacious and Balazs Ventures terminating Gaughf Properties. The Liquidation Agreement provided that "Any and all assets of the Partnership held by the Partnership as of the date of dissolution shall be distributed to the Partners prorata in accordance with the Schedule attached hereto." The attached schedule stated that Bodacious was entitled to 99.6% of partnership assets, while Balazs Ventures was entitled to the remaining 0.4% of partnership assets. On

_____
[5] The legal opinion discussed Mr. Gaughf's basis in Gaughf Properties even though he only indirectly owned partnership interests.

December 29, 1999, Bodacious received $45,066.46[6] from Gaughf Properties as a result of the liquidation.[7]

3. *The Quanta Stock Transactions*

In addition to the investment accounts through Deutsche Bank BT Alex. Brown, LLC, brokerage accounts for both Gaughf Properties and Bodacious were established with Edward D. Jones & Co., L.P. (Edward Jones). Mr. Gaughf also had a brokerage account with Edward Jones. On November 19, 1999, Mr. Gaughf transferred 142,783 shares of Quanta stock from his Edward Jones account to the Bodacious Edward Jones account. On December 9, 1999, Bodacious sold the 142,783 shares of Quanta stock for prices ranging from $31⅛ to $31.[8] After commissions and expenses were deducted, the stock sale generated net proceeds of $4,418,243.

On December 14, 1999, Mr. Gaughf transferred an additional 2,575 shares of Quanta stock from his Edward Jones account to the Bodacious Edward Jones account. On December 20, 1999, Bodacious then transferred these shares to the Gaughf Properties Edward Jones account. Also on December 20, 1999, Mr. Gaughf transferred an additional 4,925 shares of Quanta stock from his Edward Jones account directly to the Gaughf Properties Edward Jones account. On December 30, 1999, Gaughf Properties then transferred, in liquidation, the 7,500 shares of Quanta it then owned to the Bodacious Edward Jones account.[9] The next day Bodacious sold the 7,500 shares for net proceeds of $207,003 after commissions and expenses.

---

[6] The additional $66.46 was nontaxable dividend income from "Deutsche Bank Alex. Brown Cash Reserve Fund, Inc.—Tax Free Ser" paid to Gaughf Properties.

[7] Despite the fact that the Liquidation Agreement provides that the assets of Gaughf Properties would be distributed to its partners pro rata in accordance with each partner's percentage ownership in Gaughf Properties, Balazs Ventures did not receive any assets upon liquidation of Gaughf Properties. It is unclear why.

[8] Respondent argued that the stock sale was actually three separate stock sales of 133,783 shares at $31, 7,000 shares at $31 1/16, and 2,000 shares at $31⅛. Given that each sale block had the same order number, we believe it more likely that the shares were actually part of one trade, which, because of a lack of sufficient shares for sale at one particular price, extended over three different prices.

[9] The shares were transferred to Bodacious in liquidation of Gaughf Properties because Gaughf Enterprises assigned its general and limited partnership interests in Gaughf Properties to Bodacious, and Balazs Ventures assigned its general partnership interest in Gaughf Properties to Bodacious, on December 27, 1999, as previously described.

According to a legal opinion issued to Mr. Gaughf by J&G, the 7,500 Quanta shares transferred to Bodacious in liquidation of Gaughf Properties had an increased basis as a result of the inflated outside partnership basis in Gaughf Properties held by Mr. Gaughf resulting from the currency options transactions. As a result, the legal opinion stated that Bodacious recognized a significant long-term capital loss upon its sale of the 7,500 shares on December 31, 1999. Petitioner has stipulated that the basis in the Quanta stock was "incorrectly overstated" for purposes of the period of limitation issue considered in this Opinion.

4. *Tax Returns of the Gaughfs, Gaughf Properties, and Bodacious*

The Gaughfs (jointly), Bodacious, and Gaughf Properties timely filed their 1999 tax returns on or before April 17, 2000. Each of these three returns was prepared by Kathy Nall of KPMG and was filed with the IRS Service Center in Atlanta, Georgia. The legal opinion issued by J&G was used to help prepare the returns.

Ms. Nall was a manager in KPMG's tax department at the time she prepared the returns for the Gaughfs, Gaughf Properties, and Bodacious. However, she left KPMG in 2001, and all her client files (including those relating to the Gaughfs, Gaughf Properties, and Bodacious) remained with KPMG. At trial she was unable to recall most of the work she had completed on behalf of the Gaughfs, Gaughf Properties, and Bodacious. The parties stipulated that respondent issued summonses to KPMG at some unestablished time, but the point was not well developed, as discussed further *infra*.

Before filing the tax returns for the Gaughfs, Gaughf Properties, and Bodacious, Ms. Nall sent an email to her boss, seeking clarification on certain items. Ms. Nall noted that of the $45,000 contribution made to Gaughf Properties from Gaughf Enterprises, $900 was a deemed contribution from Bodacious. Ms. Nall stated in the email that this transaction made it look as though Bodacious was a 2% partner in Gaughf Properties, yet it was not listed as a partner on any Gaughf Properties Schedule K–1, Partner's Share of Income, Deductions, Credits, etc. Ms. Nall also stated that the agree-

ments relating to the cash contributions did not indicate that Balazs Ventures was a partner in Gaughf Properties.

On its 1999 partnership return Gaughf Properties listed Gaughf Enterprises as its TMP. Gaughf Properties reported no taxable income, tax-exempt interest income of $66, and an ordinary loss of $45,000. The Schedule M–2, Analysis of Partners' Capital Accounts, attached to Gaughf Properties' partnership return, reported total capital contributions of $300,000 and total distributions of $255,066. The $255,066 distribution was specifically identified as a cash distribution.

Three Schedules K–1 were attached to the Gaughf Properties partnership return. Two of these were for Gaughf Enterprises, as Gaughf Properties identified Gaughf Enterprises as holding two separate partnership interests (of 99% and 0.6%) in Gaughf Properties. The third Schedule K–1 was for Balazs Ventures. On the Schedules K–1 Gaughf Properties reported contributions of $1,800 and $297,000 from Gaughf Enterprises, as well as a $1,200 contribution from Balazs Ventures. Gaughf Properties also reported distributions of $1,530 and $252,516 to Gaughf Enterprises, as well as a $1,020 distribution to Balazs Ventures. Gaughf Properties' 1999 partnership return did not mention Bodacious.

The Gaughf Properties tax return did not make clear how the partnership calculated the total of $300,000 in capital contributions received in the light of the transactions described *supra*. The return made no mention of the 7,500 Quanta shares contributed by Bodacious and Mr. Gaughf, the $44,100 contribution from Gaughf Enterprises, the deemed $900 contribution from Bodacious, or the currency options contributed by Gaughf Enterprises. However, considering these transactions it appears that the $300,000 was reached by adding: (1) $44,100 and $900 in cash contributions; (2) the net stated currency option premiums (which equaled $45,000); and (3) an additional $210,000 representing the 7,500 Quanta shares contributed. [10]

The 1999 Bodacious return was signed by Mr. Gaughf and did not mention Gaughf Properties by name. The Bodacious return included a statement entitled "Bodacious, Inc. Section 351 Disclosure Statement" which indicated that on December

---

[10] The market value of the 7,500 Quanta shares on December 20, 1999 (the date the shares were contributed to Gaughf Properties), was $208,125 ($27.75 per share).

27, 1999, Bodacious received from Mr. Gaughf an interest in an unnamed partnership having a basis of $4,513,528, that Mr. Gaughf received no property, money, or securities in exchange, and that Bodacious assumed no liabilities as a result of the transfer. The Bodacious return also reported that Bodacious sold 150,283 shares of Quanta stock on December 14, 1999. The return reported the sale price of these 150,283 shares was $4,625,266, and the reported cost basis in the shares was $4,745,185.[11] The Bodacious return did not explain how this cost basis in the Quanta shares sold was calculated.

On Statement 9 of their joint tax return, the Gaughfs reported a long-term capital loss flowing from Bodacious of $119,919, equal to Bodacious' reported cost basis in the Quanta shares minus the sale proceeds. Had the Gaughfs sold the Quanta stock without going through the previous transactions in an attempt to inflate its basis, the result would have instead been a capital gain of approximately $4.3 million. The Gaughfs' return also included a section 351 statement claiming that Mr. Gaughf had a "tax basis" in Gaughf Properties[12] of $4,513,528 which was transferred to Bodacious on December 28, 1999.

5. *J&G Summons and Information Provided by J&G*

On June 19, 2003, respondent issued a John Doe summons[13] to J&G in connection with an audit to determine whether the firm was liable for penalties as a promoter of a tax shelter. The summons requested that J&G produce the names, addresses, and taxpayer identification numbers (TINs) for taxpayers who from January 1, 1998, through June 15, 2003, participated in any transaction which was or later became a listed transaction or other potentially abusive tax shelter, organized or sold by J&G's Chicago office. J&G did not comply with the John Doe summons, asserting on

[11] This reported $4,745,185 cost basis is the result of the inflated outside basis in Gaughf Properties purportedly attaching to the block of 7,500 Quanta shares which was distributed to Bodacious upon the liquidation of Gaughf Properties.

[12] Unlike the sec. 351 statement included with the Bodacious return, the sec. 351 statement included with the Gaughfs' return did identify Gaughf Properties by name.

[13] "A John Doe summons is any summons where the name of the taxpayer under investigation is unknown and therefore not specifically identified." Internal Revenue Manual pt. 25.5.7.2 (Nov. 22, 2011).

attorney-client privilege grounds that it could not disclose the information.

On August 14, 2003, the Department of Justice, as counsel for the IRS, filed a petition in the U.S. District Court for the Northern District of Illinois seeking to enforce the summons. By order dated May 14, 2004, the District Court granted the petition and enforced the summons. On May 17, 2004, J&G provided a list of existing and/or former clients of J&G to the Department of Justice in compliance with the summons. This list included Mr. Gaughf's name, address, and TIN, as well as a reference to his being involved in a transaction with J&G for tax year 1999. [14] The revenue agent who had been investigating J&G received the list shortly after it was produced by J&G. On June 16, 2004, respondent's Office of Professional Responsibility used the information supplied to write Mr. Gaughf a letter advising him of the investigation of J&G.

On or about July 7, 2004, J&G provided the revenue agent investigating it with a set of approximately 1,300 compact disks (CDs) containing documents relating to various existing or former clients of J&G, a list of such J&G clients, and an index of the documents which were stored on the CDs. The CDs included approximately 480 pages of documents pertaining to the transactions involving the Gaughfs, Gaughf Properties, Bodacious, Balazs Ventures, and Gaughf Enterprises. The names, addresses, and TINs of the Gaughfs, Gaughf Properties, Bodacious, Balazs Ventures, and Gaughf Enterprises were also provided on some of the documents on the CDs. The CDs contained copies of the Forms SS–4 filed with respondent for Gaughf Properties, Gaughf Enterprises, and Balazs Ventures. The CDs contained a company profile of Gaughf Enterprises which included Mr. Gaughf's name, address, and Social Security number and identified him as owning 100% of Gaughf Enterprises. The company profile also contained the employee identification number for Gaughf Enterprises. A similar company profile for Balazs Ventures with the same information pertaining to that LLC and Mrs. Gaughf was also provided on the CDs. In addition, the CDs contained the articles of organization for both

Gaughf Enterprises and Balazs Ventures, both of which provided information about the Gaughfs similar to the information found in the company profiles.

The revenue agent who received the CDs did not conduct examinations of the J&G clients. He stored the CDs in his office in Illinois[15] and also downloaded them onto a computer in his office but did not disseminate the information they contained throughout the IRS or advertise the fact that he had such information.[16] However, as word got around, other IRS personnel began to call the revenue agent to request documents for particular J&G clients, which the revenue agent would then supply.

6. *Audits of Returns of the Gaughfs, Gaughf Properties, and Bodacious*

On January 10, 2006, a revenue agent different from the one investigating J&G was assigned to audit returns of the Gaughfs and their related entities for tax year 1999.[17] This revenue agent was initially provided with the Gaughfs' tax return and on January 19, 2006, was also provided with the J&G documents pertaining to the Gaughfs.[18] On January 25, 2006, the revenue agent used information on the Gaughfs' 1999 tax return to send them a letter notifying them that their 1999 tax return had been selected for examination. On January 31, 2006, the revenue agent sent a letter to the Gaughfs enclosing written requests for information and documents noted on Forms 4564, Information Document Requests. The Gaughfs provided no information or documents in response to the requests.

On February 23, 2006, the same revenue agent auditing the Gaughfs' return sent a letter to Gaughf Enterprises, as the TMP of Gaughf Properties, notifying it that Gaughf Properties' tax return for 1999 had been selected for examination. On the same date, the revenue agent sent written requests

---

[15] During the relevant years, the revenue agent did not work at any IRS Service Center. For all relevant years the revenue agent worked in either Chicago or Downers Grove Park, Illinois.

[16] The revenue agent testified that he "was very protective of" the information and that other IRS employees would have to learn of the fact that he had the CDs "through some of these Son of Boss coordinators that were around."

[17] This revenue agent worked out of San Jose, California, at the time he was auditing returns of the Gaughfs and their entities.

[18] The revenue agent received tax returns for Gaughf Properties and Bodacious approximately one month after he was provided with the J&G documents.

for information and documents noted on Forms 4564 to Gaughf Enterprises, as the TMP for Gaughf Properties. No information or documents were provided in response to the requests.

On April 12, 2006, the Gaughfs and their certified public accountant, Porter Thompkins, executed Form 872–I, Consent to Extend the Time to Assess Tax As Well As Tax Attributable to Items of a Partnership, regarding tax year 1999. On May 10, 2006, an IRS group manager executed the Form 872–I agreement on behalf of respondent. The Form 872–I extended the limitations period for respondent to assess tax liabilities against the Gaughfs for tax year 1999, including liabilities attributable to any partnership items, affected items, computational adjustments, and partnership items converted to nonpartnership items until April 16, 2007. However, the Form 872–I agreement had no effect unless a limitations period applicable for respondent to timely assess any of the tax liabilities covered by the Form 872–I was open on May 10, 2006, the day the agreement was executed on behalf of respondent.

On May 18, 2006, respondent issued a notice of beginning of administrative proceeding (NBAP) to both Gaughf Enterprises and Balazs Ventures. On March 30, 2007, respondent issued the FPAA which is the basis of this case for Gaughf Properties' TYE December 27, 1999. The FPAA was issued to Gaughf Enterprises, as TMP for Gaughf Properties. On August 15, 2007, Balazs Ventures, a partner other than the TMP, timely filed a Petition for Readjustment of Partnership Items Under Code Section 6226, on behalf of Gaughf Properties contesting the FPAA. Petitioner claimed in the petition that on March 30, 2007, the statutory period for assessment for Gaughf Properties' TYE December 27, 1999, was no longer open. This issue was separated from other issues in the case for purposes of trial and opinion.

7. *Additional Information Relevant to Petitioner's Estoppel Argument*

At the time the FPAA was issued respondent argued that there was omitted income resulting from the expiration of the short currency option. The Commissioner advanced similar justification for extending the statutory period for

assessment in another case, *Highwood Partners v. Commissioner*, docket No. 24463–06. The Commissioner withdrew this argument in *Highwood Partners* on April 18, 2008, but presented alternative arguments why the statutory period for assessment was properly extended in that case. However, the Commissioner later withdrew his alternative arguments and conceded that case in its entirety on March 15, 2010.

Trial for this case was set for February 4, 2010, but on January 19, 2010, was continued to February 25, 2010, at respondent's request. At a February 3, 2010, hearing respondent stated that he was still contemplating whether to assert that there was omitted income resulting from the expiration of the short currency option. In addition, respondent stated that three other grounds supported the extension of the statutory period for assessment: (1) the section 6229(e) issue being considered in this Opinion; (2) the section 6501(e)(1)(A) issue that respondent conceded after trial as a result of the recent Supreme Court decision in *United States v. Home Concrete & Supply, LLC*, 566 U.S. \_\_\_\_, 132 S. Ct. 1836 (2012); and (3) that it was Gaughf Properties (rather than Bodacious) that sold 7,500 shares of Quanta stock and failed to report a gain on the sale of approximately $207,000. On February 3, 2010, we continued the trial of this case to May 17, 2010.

On February 25, 2010, respondent conceded his original short option income position regarding the statutory period for assessment in this case. On March 3, 2010, we allowed respondent to amend his answer to the petition to assert his three other alternative statutory-period-for-assessment arguments. Less than a month later respondent conceded that his argument that it was Gaughf Properties that sold 7,500 shares of Quanta stock and failed to report a gain on the sale was incorrect. The parties then proceeded to trial on the remaining two issues.

## *Discussion*

### I. *Burden of Proof*

Generally, taxpayers bear the burden of proving, by a preponderance of the evidence, that the determinations of the Commissioner are incorrect. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Taxpayers raising affirmative

defenses such as the expiration of the period of limitations also typically bear the burden of proving those defenses apply. *Hoffman v. Commissioner*, 119 T.C. 140, 146 (2002). Petitioner argues that respondent should bear the burden of proof because: (1) respondent's argument that the statutory period for assessing tax attributable to partnership items remains open with respect to the Gaughfs under section 6229(e) constitutes a "new matter" under Rule 142(a)(1); and (2) respondent bears the burden of proving the factual foundation for any exception to the normal three-year limitations period once petitioner demonstrates that respondent issued the notice beyond that period. However, because we decide this case on the basis of the preponderance of the evidence, we need not decide upon which party the burden of proof rests. *See Knudsen v. Commissioner*, 131 T.C. 185 (2008).

II. *Whether the Statutory Period for Assessing Tax Attributable to Partnership Items Was Open on March 30, 2007, Under Section 6229(e) With Respect to the Gaughfs*

Section 6229(e) provides:

SEC. 6229(e). UNIDENTIFIED PARTNER. If—

(1) the name, address, and taxpayer identification number of a partner are not furnished on the partnership return for a partnership taxable year, and

(2)(A) the Secretary, before the expiration of the period otherwise provided under this section with respect to such partner, mails to the tax matters partner the notice specified in paragraph (2) of section 6223(a) with respect to such taxable year, or

(B) the partner has failed to comply with subsection (b) of section 6222 (relating to notification of inconsistent treatment) with respect to any partnership item for such taxable year,

the period for assessing any tax imposed by subtitle A which is attributable to any partnership item (or affected item) for such taxable year shall not expire with respect to such partner before the date which is 1 year after the date on which the name, address, and taxpayer identification number of such partner are furnished to the Secretary.

Respondent argues that the statutory period for assessing tax attributable to partnership items against the Gaughfs was open under section 6229(e)[19] at the time the FPAA was issued because: (1) Gaughf Properties' partnership return for

---

[19]Respondent has not argued that sec. 6229(e)(2)(A) applies in this case.

TYE December 27, 1999 (Gaughf Properties 1999 return), failed to furnish certain information identifying the Gaughfs as partners in Gaughf Properties; (2) the Gaughfs failed to comply with section 6222(b); and (3) the Gaughfs' taxpayer information was never "furnished" to respondent in accordance with the requirements of regulations applicable under section 6229(e). Petitioner makes various counterarguments why the statutory period for assessment is not open under section 6229(e). We address each of respondent's statutory-period-for-assessment arguments below, as well as the arguments made by petitioner.

### A. *Whether the Gaughf Properties 1999 Return Furnished the Gaughfs' Names, Addresses, and TINs*

Respondent claims that the Gaughf Properties 1999 return failed to furnish the Gaughfs' names, addresses, and TINs as required by section 6229(e)(1). Petitioner does not dispute this fact but states that "The Gaughfs are not listed because, under Respondent's applicable regulations and filing instructions for 1999, U.S. partnership returns were required to include Schedules K–1 for their direct partners, not those holding an interest in those [direct] partners."

The court in *Costello v. United States Gov't*, 765 F. Supp. 1003 (C.D. Cal. 1991), addressed a similar situation in which information regarding an indirect partner required to satisfy section 6229(e)(1) was not included on the partnership return. The court held that although indirect partners were not required to be listed on a partnership return,[20] section 6229(e) nonetheless applied to indirect partners. *Costello*, 765 F. Supp. at 1008. In support of its holding, the court cited section 301.6229(e)–1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6789 (Mar. 5, 1987), which provides, in pertinent part, that "A partner who is not properly identified on the partnership return (*including an indirect partner*) remains an unidentified partner for purposes of section 6229(e) until identifying information is furnished"[21] (emphasis supplied) to the Commissioner.

---

[20] The court noted that sec. 1.6031–1, Income Tax Regs., required that only immediate partners be listed on a partnership return. While this regulation was later removed, it was effective for tax years ending during 1999. *See* 64 Fed. Reg. 61498 (Nov. 12, 1999).

[21] Petitioner has argued that sec. 301.6229(e)–1T, Temporary Proced. & Admin. Regs., 52 Fed.

Continued

We agree with the U.S. District Court for the Central District of California that section 6229(e) applies to indirect partners. [22] *See* sec. 301.6229(e)–1T, Temporary Proced. & Admin. Regs., *supra*. Therefore, because the Gaughf Properties 1999 return failed to furnish the Gaughfs' names, addresses, and TINs, the first of respondent's statutory-period-for-assessment arguments is satisfied.

### B. *Whether the Gaughfs Failed To Comply With Section 6222(b)*

One of the requirements for extending the statutory period for assessment under section 6229(e) is that "the partner has failed to comply with subsection (b) of section 6222 (relating to notification of inconsistent treatment) with respect to any partnership item for such taxable year." Sec. 6229(e)(2)(B). Section 6222(b)(1) provides that if "the partnership has filed a return but the partner's treatment on his return is (or may be) inconsistent with the treatment of the item on the partnership return" then the partner may file "with the Secretary a statement identifying the inconsistency" in order to satisfy section 6222(b) (and therefore cause section 6229(e)(2)(B) to be inapplicable). [23]

Respondent argues that the Gaughfs failed to comply with section 6222(b), claiming that the Gaughfs: (1) treated partnership items of Gaughf Properties on their personal return in a manner inconsistent with how Gaughf Properties treated those items on the Gaughf Properties 1999 return; and (2) did not notify respondent of this inconsistent treatment. Petitioner claims that "Respondent points to (i) no inconsistent treatment (ii) of a partnership item (iii) by a partnership and a partner—as required by Section 6222(b)."

---

Reg. 6789 (Mar. 5, 1987), is invalid under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984). As discussed further *infra*, we find the regulation is valid.

[22] This conclusion is consistent with sec. 6223(c)(3), which requires the Commissioner to send NBAPs and FPAAs to indirect partners rather than direct partners if the Commissioner is furnished with sufficient information identifying indirect partners.

[23] Sec. 6222(b)(2) provides that in the case of a partner receiving incorrect information from the partnership, the partner is treated as having filed a statement identifying an inconsistency with the Secretary if the partner: "(A) demonstrates to the satisfaction of the Secretary that the treatment of the partnership item on the partner's return is consistent with the treatment of the item on the schedule furnished to the partner by the partnership, and (B) elects to have * * * [sec. 6222(b)(2)] apply with respect to that item." Neither party has argued the applicability of sec. 6222(b)(2) in this case.

1. *Whether the Gaughfs Treated Partnership Items of Gaughf Properties on Their Personal Tax Return in a Manner Inconsistent With How Gaughf Properties Treated Those Items on the Gaughf Properties 1999 Return*

Partnership items are defined to include not only "Items of income, gain, loss, deduction, or credit of the partnership", but also "the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." of the partnership. Sec. 301.6231(a)(3)–1(a)(1)(i), (b), Proced. & Admin. Regs. Partnership items also include contributions to and distributions from the partnership

to the extent that a determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of furnishing information to a partner. [*Id.* para. (a)(4).]

Given these definitions for the term "partnership item", we find that the contributions of the currency options and the 7,500 shares of Quanta stock to Gaughf Properties, as well as the distribution of the 7,500 Quanta shares to Bodacious upon Gaughf Properties' liquidation, were partnership items. The contribution and distribution of the Quanta shares were determinations that Gaughf Properties was required to make for purposes of furnishing information to its partners.[24] The currency options contributed likewise affected amounts required to be reported to the partners on their Schedules K–1. The currency options also affected the income reported by Gaughf Properties, which reported an ordinary loss of $45,000 when the options terminated according to their terms.

We find that on their 1999 return the Gaughfs treated these partnership items inconsistently from the way they were treated on the Gaughf Properties 1999 return. Although much of the property contributed to Gaughf Properties came from either Gaughf Enterprises or Bodacious, and the 7,500

---

[24] Schedule K–1 requires a partnership to state capital contributions received from a partner in a given year as well as "Withdrawals and distributions" made to the partner.

shares were distributed to Bodacious (from Gaughf Properties), we find that any inconsistent treatment of these partnership items by Gaughf Enterprises and Bodacious should also be considered as inconsistent treatment by the Gaughfs because Gaughf Enterprises was a disregarded entity, and Bodacious was an S corporation whose income and losses flowed through to the Gaughfs' personal return. *See* sec. 6231(a)(2)(B) ("The term 'partner' means * * * any * * * person whose income tax liability under subtitle A is determined in whole or in part by taking into account directly *or indirectly* partnership items of the partnership." (Emphasis supplied.)).

Gaughf Properties netted the amounts of the stated premiums for the two currency options in reporting the value of the capital contributions on its return. However, Bodacious (and hence, the Gaughfs) treated only the long option as a capital contribution to Gaughf Properties for purposes of determining the basis in the 7,500 Quanta shares distributed to Bodacious upon the liquidation of Gaughf Properties. This resulted in an incorrect overstatement of Bodacious's basis in the Quanta stock which was not accounted for on Gaughf Properties' 1999 return. When Bodacious subsequently sold the stock, the result was a claimed capital loss of $119,919 instead of a capital gain of approximately $4.3 million which would have resulted had the basis not been overstated.

In addition to the inconsistent treatment by Bodacious, the Gaughfs also directly treated partnership items inconsistently from the way they were reported on the Gaughf Properties 1999 return. A section 351 statement was included with the Gaughfs' 1999 tax return which claimed that Mr. Gaughf had a tax basis in Gaughf Properties of $4,513,528. This figure included Mr. Gaughf's accounting for the contribution of the long option to Gaughf Properties (contributed by Gaughf Enterprises, a disregarded entity) without accounting for the contribution of the short option (also contributed by Gaughf Enterprises). This was inconsistent with the netting of the currency options used by Gaughf Properties in determining and reporting the capital contributions it received from its partners.

For the foregoing reasons, we find that the Gaughfs treated partnership items of Gaughf Properties on their per-

sonal return in a manner which was inconsistent with their
treatment on the Gaughf Properties 1999 return.

2. *Whether the Gaughfs Notified Respondent of Inconsistent
Treatment of Partnership Items on Their Personal Tax
Return and the Gaughf Properties 1999 Return*

As previously mentioned, if a partner's treatment of a part-
nership item on the partner's return is inconsistent with the
treatment of the item on the partnership return, then the
partner must file with the Secretary a statement identifying
the inconsistency in order to satisfy section 6222(b) (and
therefore cause section 6229(e)(2)(B) to be inapplicable). Sec-
tion 301.6222(b)–1T, Temporary Proced. & Admin. Regs., 52
Fed. Reg. 6782 (Mar. 5, 1987), provides this statement must
be filed through the Commissioner's form prescribed for that
purpose. During the relevant period the required form was
Form 8082, Notice of Inconsistent Treatment or Administra-
tive Adjustment Request. Instructions for Form 8082 (Rev.
Jan. 2000); *see also Blonien v. Commissioner*, 118 T.C. 541,
555–556 (2002).

Petitioner has not argued that the Gaughfs filed a Form
8082. At trial the Gaughfs testified that they had no recollec-
tion of ever filing a Form 8082. The revenue agent assigned
to audit the returns of the Gaughfs and their related entities
testified that the administrative file he maintained in
connection with the audit contained no Form 8082. Ms. Nall,
who prepared the returns for the Gaughfs and their entities,
could not recall filing a Form 8082. Considering these facts,
we find that the Gaughfs did not notify respondent that they
treated partnership items of Gaughf Properties on their per-
sonal return in a manner which was inconsistent with their
treatment on the Gaughf Properties 1999 return.

Given our findings that the Gaughfs: (1) treated partner-
ship items of Gaughf Properties on their personal return in
a manner which was inconsistent with their treatment on
the Gaughf Properties 1999 return; and (2) did not notify
respondent of this inconsistent treatment, we conclude that
the Gaughfs failed to comply with section 6222(b). Thus, the
second of respondent's statutory-period-for-assessment argu-
ments is satisfied.

C. *Whether Information Identifying the Gaughfs as Indirect Partners in Gaughf Properties Was Furnished to Respondent More Than One Year Before the FPAA Was Issued*

Section 6229(e) provides that if certain information identifying a partner is not furnished on the partnership return for a partnership taxable year and that partner fails to comply with the requirements pertaining to inconsistent treatment of partnership items for that taxable year, the period for assessing any tax attributable to any partnership or affected item for such taxable year remains open with respect to such partner until "1 year after the date on which the name, address, and taxpayer identification number of such partner are furnished to the Secretary." Regarding furnishing such information, section 301.6229(e)–1T, Temporary Proced. & Admin. Regs., *supra*, provides that "[a] partner who is not properly identified on the partnership return (including an indirect partner) remains an unidentified partner for purposes of section 6229(e) until identifying information is furnished as provided in § 301.6223(c)–1T."

Section 301.6223(c)–1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6784 (Mar. 5, 1987),[25] provides in pertinent part—

(a) In general. In addition to the names, addresses, and profits interests as shown on the partnership return, the Service will use additional information as provided in this section for purposes of administering subchapter C of chapter 63 of the Code.

(b) Procedure for furnishing additional information—(1) In general. Any person may furnish additional information at any time by filing a written statement with the Service. * * *

(2) Where statement must be filed. A statement furnished under this section shall generally be filed with the service center with which the partnership return is filed. However, if the person filing the statement knows that the notice described in section 6223(a)(1) (beginning of an administrative proceeding) has already been mailed to the tax matters partner, the statement shall be filed with the Internal Revenue Service office that mailed such notice.

(3) Contents of statement. The statement shall—

---

[25] Both sec. 301.6229(e)–1T, Temporary Proced. & Admin. Regs., *supra*, and sec. 301.6223(c)–1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6784 (Mar. 5, 1987), are effective for the year in issue. Effective with partnership taxable years beginning on or after October 4, 2001, the Commissioner has issued final regulations on the subject matter at hand. *See* secs. 301.6229(e)–1, 301.6223(c)–1, Proced. & Admin. Regs. The temporary regulations applicable herein are similar to the final regulations.

(i) Identify the partnership, each partner for whom information is supplied, and the person supplying the information by name, address, and taxpayer identification number;

(ii) Explain that the statement is furnished to correct or supplement earlier information with respect to the partners in the partnership;

(iii) Specify the taxable year to which the information relates;

(iv) Set out the corrected or additional information, and

(v) Be signed by the person supplying the information.

(c) No incorporation by reference to previously furnished documents. Incorporation by reference of information contained in another document previously furnished to the Internal Revenue Service will not be given effect for purposes of sections 6223(c) or 6229(e). For example, reference to a return filed by a pass-thru partner which contains identifying information with respect to the indirect partners of that pass-through partner is not sufficient to identify the indirect partners unless a copy of the document referred to is attached to the statement.

(d) Information supplied by a person other than the tax matters partner. The Service may require appropriate verification in the case of information furnished by a person other than the tax matters partner. The 30-day period referred to in paragraph (b)(1) of this section shall not begin until that verification is supplied

\* \* \* \* \* \* \*

(f) Service may use other information. In addition to the information on the partnership return and that supplied on statements filed under this section, the Service may use other information in its possession (for example, a change in address reflected on a partner's return) in administering subchapter C of chapter 63 of the Code. However, the Service is not obligated to search its records for information not expressly furnished under this section.

Respondent argues that the identifying information referred to in section 6229(e) was not furnished to him because no documents he received satisfy the requirements of section 301.6223(c)–1T, Temporary Proced. & Admin. Regs., *supra*. In addition to contesting respondent's position, petitioner argues that: (1) respondent failed to prove that he did not receive the required information from KPMG; (2) respondent actually used information in his possession which identified the Gaughfs as indirect partners in Gaughf Properties and supplied their names, addresses, and TINs; and (3) section 301.6229(e)–1T, Temporary Proced. & Admin. Regs., *supra*, which incorporates section 301.6223(c)–1T, Temporary Proced. & Admin. Regs., *supra*, regarding the procedure for furnishing identifying information for purposes of section 6229(e), is invalid.

For the reasons stated below we reject each of petitioner's arguments and find that the information required pursuant to section 6229(e) and the applicable regulations identifying the Gaughfs as partners in Gaughf Properties was not furnished to respondent. As a result, we find that the third of respondent's statutory-period-for-assessment arguments is satisfied.

1. *Whether Documents Received by Respondent Satisfy the Requirements of Section 301.6223(c)–1T, Temporary Proced. & Admin. Regs.*

Respondent does not dispute that he received extensive amounts of information regarding the Gaughfs from J&G (including their names, joint address, TINs, and status as indirect partners in Gaughf Properties), as well as Forms SS–4 for each of Bodacious, Gaughf Properties, Gaughf Enterprises, and Balazs Ventures (which contained various pieces of identifying information regarding the Gaughfs and their relationships to the various entities). However, respondent argues that certain elements of section 301.6223(c)–1T, Temporary Proced. & Admin. Regs., *supra*, were not satisfied by this information. We agree.

Section 301.6223(c)–1T(b)(2), Temporary Proced. & Admin. Regs., *supra*, provides that a correcting statement "shall generally be filed with the [IRS] service center with which the partnership return is filed." An exception exists "if the person filing the statement knows that the notice described in section 6223(a)(1) (beginning of an administrative proceeding) has already been mailed to the tax matters partner." Sec. 301.6223(c)–1T(b)(2), Temporary Proced. & Admin. Regs., *supra*. In that case "the statement shall be filed with the Internal Revenue Service office that mailed such notice." *Id.* The information supplied by J&G in response to respondent's summons fails to meet this requirement, as it was supplied to a revenue agent who worked in Illinois during the relevant years as opposed to the IRS Service Center in Atlanta, Georgia.[26]

---

[26] We need not consider whether any statements were filed with the IRS office which mailed the NBAP because the Internal Revenue Service Center in Atlanta would have been the only place where a statement identifying the Gaughfs as indirect partners in Gaughf Properties could have been filed to cause the FPAA in this case to have been issued untimely. Sec. 301.6223(c)–1T(b)(2), Temporary Proced. & Admin. Regs., *supra*, requires an identifying statement be filed at the same service center where the partnership return was filed (Atlanta in Gaughf Properties'

The information supplied by J&G also fails to satisfy the requirement of section 301.6223(c)–1T(b)(3)(ii), Temporary Proced. & Admin. Regs., *supra*, that a statement "Explain that * * * [it] is furnished to correct or supplement earlier information with respect to the partners in the partnership". No such statement is contained in the extensive number of documents supplied by J&G.

With regard to the Forms SS–4, it is true that these documents were properly filed with the IRS Service Center in Atlanta, Georgia. However, the Forms SS–4 do not state that they were filed to "correct or supplement earlier information with respect to the partners in the partnership". *See* sec. 301.6223(c)–1T(b)(3)(ii), Temporary Proced. & Admin. Regs., *supra*. Indeed, the Forms SS–4 were filed several months before any of the relevant tax returns were filed. The Forms SS–4 thus also fail to comply with section 301.6223(c)–1T, Temporary Proced. & Admin. Regs., *supra*.

Petitioner points to, and we have found, no other documents in the record which might comply with the requirements of section 301.6223(c)–1T, Temporary Proced. & Admin. Regs., *supra*.[27] Beyond speculation, no testimony was given at trial that any party had filed any such document which was not contained in the record. However, petitioner has raised the possibility that KPMG filed a proper identifying statement with respondent, a possibility which we address separately below.

### 2. *Whether Respondent Received an Identifying Statement Conforming With Section 301.6223(c)–1T, Temporary Proced. & Admin. Regs., From KPMG*

The parties stipulated that respondent issued summonses to KPMG at some unestablished time. The relevant stipula-

---

case) unless the person filing the statement knows that an NBAP has already been mailed to the TMP. In such a case, the statement shall be filed with the IRS office that mailed the NBAP. *Id.* However, the NBAP in this case was not mailed until May 18, 2006. Even if the identifying statement had been filed with the IRS office which mailed the NBAP the same day it was mailed (May 18, 2006), the statutory period for assessment under sec. 6229(e) would not have closed for another year (May 18, 2007). In this case the FPAA was issued on March 30, 2007, less than a year after the NBAP was mailed.

[27] Certain Deutsche Bank documents provided to respondent in response to an IRS summons list Mr. Gaughf, Gaughf Enterprises, Gaughf Properties, and Bodacious as potentially participating in transactions involving foreign exchange digital options. However, the list fails to satisfy multiple elements of sec. 301.6223(c)–1T, Temporary Proced. & Admin. Regs., *supra*. Petitioner has not argued that the list satisfies the required elements.

tions state: "Attached * * * are a series of IRS summonses Respondent issued to Deutsche Bank and its affiliates" and "Respondent also issued summonses to KPMG." The Deutsche Bank summonses requested information identifying clients who had taken part in transactions involving foreign exchange digital options. The KPMG summonses were not included in evidence.

Multiple times during pretrial discovery petitioner requested any information respondent had received from KPMG concerning the Gaughfs or their entities. Respondent's answers to the requests were that he had received no taxpayer identifying information relating to the Gaughfs from KPMG and had already supplied petitioner with any information KPMG had provided. [28] Neither respondent nor petitioner chose to call a representative of KPMG at trial. [29]

On brief petitioner claims that respondent bears the burden of proof on this issue, a burden which he allegedly failed to satisfy because he "utterly failed to prove what he received from KPMG or when he received it." Respondent did not address the issue on brief but has previously argued that he never received an identifying statement conforming with section 301.6223(c)–1T, Temporary Proced. & Admin. Regs., *supra*, from any entity.

Petitioner's argument regarding possible information received by KPMG relies only on speculation and the fact that respondent issued summonses to KPMG at some point. We first note that even if respondent had received identifying information from KPMG as a result of a summons, we believe section 301.6223(c)–1T(b)(3)(ii), Temporary Proced. & Admin. Regs., *supra*, bars information received as the result of a generic, third-party summons from satisfying section

---

[28] These answers were set out in a response to interrogatories and a response to a request for production of documents. Petitioner also made a Freedom of Information Act request for (among other items) all communications in connection with the liability of the Gaughfs for 1999. In August 2007 petitioner received information from respondent as a result of the request; no correspondence between respondent and KPMG was contained in the information supplied to petitioner.

[29] We will not infer from respondent's failure to call a representative of KPMG that resulting testimony would have been unfavorable to respondent, *see Wichita Terminal Elevator Co. v. Commissioner*, 6 T.C. 1158 (1946), *aff'd*, 162 F.2d 513 (10th Cir. 1947), because it appears that petitioner had an equal opportunity to call a representative of KPMG but did not do so, *see United States v. Rollins*, 862 F.2d 1282, 1297–1298 (7th Cir. 1988); *Kean v. Commissioner*, 469 F.2d 1183, 1187–1188 (9th Cir. 1972), *aff'g on this issue, rev'g on another issue* 51 T.C. 337, 343–344 (1968); *Grossman v. Commissioner*, T.C. Memo. 1996–452, *aff'd*, 182 F.3d 275 (4th Cir. 1999).

301.6223(c)–1T, Temporary Proced. & Admin. Regs., *supra*. Section 301.6223(c)–1T(b)(3)(ii), Temporary Proced. & Admin. Regs., *supra*, requires that an identifying statement "[e]xplain that * * * [it] is furnished to correct or supplement earlier information with respect to the partners in the partnership". Information provided in response to a generic, third-party summons would not meet this requirement.

We also find that the testimony and the lack of any substantiating evidence favor the proposition that KPMG never filed a statement identifying the Gaughfs as indirect partners in Gaughf Properties, in response to the summonses or otherwise. Ms. Nall and the Gaughfs testified that they did not know whether KPMG had ever filed an identifying statement with respondent. While it is not exceptionally strong evidence that Ms. Nall was unaware of any statement (given the fact she left KPMG in 2001 and was unable at trial to remember many of her dealings with the Gaughfs), we find it is strong evidence that the Gaughfs were not aware of any statement filed by KPMG. Although nothing in section 301.6223(c)–1T, Temporary Proced. & Admin. Regs., *supra*, would have required KPMG to notify the Gaughfs had it filed an identifying statement, we believe it to be highly unlikely that KPMG would unilaterally file such a statement without providing notification to the Gaughfs.

In addition to Ms. Nall and the Gaughfs, both the IRS revenue agent involved in the J&G investigation and the revenue agent assigned to audit returns of the Gaughfs and their related entities for tax year 1999 were called to testify at trial. The former testified that he was "pretty sure" a summons had been issued to KPMG but did not testify whether KPMG had provided respondent with any documents, in response to a summons or otherwise. The latter testified that he had no knowledge of any contact between respondent and KPMG [30] and that there were not any statements identifying the Gaughfs as partners in Gaughf Properties in the documents he received or in the administrative file he maintained.

As previously discussed, information provided in response to a generic, third-party summons would not satisfy section 301.6223(c)–1T, Temporary Proced. & Admin. Regs., *supra*.

---

[30] This revenue agent was not aware that respondent had issued summonses to KPMG.

Although petitioner argues that other information may have been filed by KPMG (not in response to a summons), no evidence or testimony supports this theory; it is entirely speculative. Considering the above facts, we find that the preponderance of the evidence favors respondent's position that KPMG never filed a statement identifying the Gaughfs as indirect partners in Gaughf Properties. We therefore reject petitioner's argument on this point.

3. *Whether the Requirements of Section 301.6223(c)–1T, Temporary Proced. & Admin. Regs., Were Satisfied Because Respondent Actually Used Information in His Possession Which Identified the Gaughfs as Indirect Partners in Gaughf Properties*

Petitioner argues that although respondent is not required to use identifying information not furnished within the meaning of section 301.6223(c)–1T, Temporary Proced. & Admin. Regs., *supra*, the fact that respondent did obtain and actually use such information during his investigation satisfied the regulation and triggered the running of the one-year period described in section 6229(e). Petitioner claims that given the date on which respondent first obtained and used information identifying the Gaughfs as indirect partners in Gaughf Properties, the one-year period closed before respondent issued the FPAA. In support of its argument, petitioner cites section 301.6223(c)–1T(f), Temporary Proced. & Admin. Regs., *supra*, which states that "the Service may use * * * information in its possession" other than information furnished within the meaning of section 301.6223(c)–1T, Temporary Proced. & Admin. Regs., *supra*. We believe that petitioner's interpretation of section 301.6223(c)–1T(f), Temporary Proced. & Admin. Regs., *supra*, as it relates to section 6229(e) is incorrect.

In its entirety, section 301.6223(c)–1T(f), Temporary Proced. & Admin. Regs., *supra*, provides—

Service may use other information. In addition to the information on the partnership return and that supplied on statements filed under this section, the Service may use other information in its possession (for example, a change in address reflected on a partner's return) in administering subchapter C of chapter 63 of the Code. However, the Service is not obligated to search its records for information not expressly furnished under this section.

We believe that the permissive language of the regulation does not impose any obligations upon the Commissioner, *see Murphy v. Commissioner*, 129 T.C. 82, 86–87 (2007), and find that the Commissioner's use of identifying information does not trigger the running of the one-year period described in section 6229(e).

Before applying section 6229(e) to extend the statutory period for assessing tax attributable to partnership items, the Commissioner must often perform an extensive investigation of a partnership in order to determine whether the partnership properly reported profits and losses.[31] The Commissioner must also engage in further investigation to discover the identity of partners who were not identified on the partnership return. During such an investigation involving an unidentified partner, we believe it quite common that the Commissioner will at some point come into possession of and use information identifying that partner, either to further the investigation or else to contact the unidentified partner (as occurred in this case after respondent received the J&G documents). Ruling that use of such information triggers the running of the one-year period described in section 6229(e) would hamper investigations of partnerships and partners, some of which go to great lengths to disguise their incomes, losses, and identities. We do not believe such a trigger to be the intended purpose of the permissive language of section 301.6223(c)–1T(f), Temporary Proced. & Admin. Regs., *supra*, as it relates to section 6229(e).

Reading section 301.6223(c)–1T(f), Temporary Proced. & Admin. Regs., *supra*, in conjunction with section 6229(e), we find that even if the Commissioner has and uses identifying information within his possession, such use does not trigger the running of the one-year period described in section 6229(e), so long as that information was not "furnished" within the meaning of section 6229(e), as explained by section 301.6223(c)–1T, Temporary Proced. & Admin. Regs., *supra*. As a result, we reject petitioner's argument on this point.

---

[31] In the instant case, for example, respondent's investigation spanned several years as a result of the complicated and inconsistently reported transactions which served to mask the proper amounts of profits and loss which should have been reported on the various relevant returns.

#### 4. *Whether Section 301.6229(e)–1T, Temporary Proced. & Admin. Regs., Is Invalid*

Petitioner's final argument regarding section 6229(e) is that section 301.6229(e)–1T, Temporary Proced. & Admin. Regs., *supra*, which incorporates section 301.6223(c)–1T, Temporary Proced. & Admin. Regs., *supra*, regarding the procedure for furnishing additional information for purposes of section 6229(e), is invalid. Petitioner argues that while section 6229(e) merely requires information identifying a partner to be "furnished" to the Commissioner, section 301.6223(c)–1T, Temporary Proced. & Admin. Regs., *supra*, restricts the plain meaning of section 6229(e) by requiring that identifying information be "filed" with the Commissioner. Petitioner also points out that section 6229(e) contains no "regulation-enabling language". We find that section 301.6229(e)–1T, Temporary Proced. & Admin. Regs., *supra*, is a valid regulation.

We first address petitioner's point regarding the lack of "regulation-enabling language" in section 6229(e). As the Supreme Court has noted, section 7805(a) provides the Commissioner with "explicit authorization to 'prescribe all needful rules and regulations for the enforcement' of the Internal Revenue Code." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. ___, ___, 131 S. Ct. 704, 714 (2011). Section 301.6229(e)–1T, Temporary Proced. & Admin. Regs., *supra*, was issued pursuant to the authority section 7805 provides to the Commissioner.[32] 52 Fed. Reg. 6779, 6780 (Mar. 5, 1987). Secondary authority for issuance of the regulation is found in section 6230(k), which provides: "The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this subchapter"; i.e., subchapter C of chapter 63, which contains sections 6221 through 6234. *Id.* We thus find petitioner's argument on this point has no merit.

We proceed to petitioner's primary argument. We must follow a regulation, unless we hold it to be invalid under the

---

[32] While sec. 7805(e)(2) provides that "Any temporary regulation shall expire within 3 years after the date of issuance of such regulation", that section applies only to regulations issued after November 20, 1988. Technical and Miscellaneous Revenue Act of 1988, Pub. L. No. 100–647, sec. 6232(a), 102 Stat. at 3734. Thus, sec. 7805(e)(2) does not apply to sec. 301.6229(e)–1T, Temporary Proced. & Admin. Regs., *supra*, because that regulation was issued in 1987. 52 Fed. Reg. 6779, 6780 (Mar. 5, 1987).

principles of *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Under *Chevron*, we first ask whether Congress has addressed the precise question at issue. *Id.* at 842. If the statute is ambiguous, we next ask whether the agency's chosen interpretation is a "reasonable interpretation" of the statute. *Id.* at 844. We may not find a regulation to be invalid unless it is "'arbitrary or capricious in substance, or manifestly contrary to the statute.'" *Mayo Found.*, 562 U.S. at ____, 131 S. Ct. at 711 (quoting *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 242 (2004)).

The first issue is whether section 6229(e) is "silent or ambiguous" on the issue in question such that the agency has room to interpret the statute. *Chevron*, 467 U.S. at 843. While we begin our analysis with the statute's text, we "must examine the meaning of certain words or phrases in context and also 'exhaust the traditional tools of statutory construction, including examining the statute's legislative history to shed new light on congressional intent, notwithstanding statutory language that appears superficially clear.'" *Sierra Club v. EPA*, 551 F.3d 1019, 1027 (D.C. Cir. 2008) (quoting *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 271 F.3d 262, 267 (D.C. Cir. 2001)). Thus, the question we must answer is whether Congress' intent is clear with respect to the use of the term "furnished to the Secretary". Petitioner argues that the word "furnish" has a meaning distinct from and broader than the word "file" and that Congress clearly intended the broader meaning to apply to identifying information supplied to the Commissioner. In support of its argument, petitioner claims that "One may assume that Congress knows how to use the word 'file' when it means the word 'file'."

We turn to the statute itself. Section 6229(e) alone uses the word "furnish" [33] twice and does not use the word "file". [34] Aside from section 6229(e), section 6229 uses the word "file" four times and does not use the word "furnish". Although those facts offer some slight support for petitioner's position, considering the definitions of the words "furnish" and "file", we believe that the intent of Congress was not clear with

---

[33] For the sake of simplicity, we count all variations on the same word.

[34] However, sec. 6229(e) does reference sec. 6222(b), which uses the word "file" multiple times.

respect to the use of the term "furnished to the Secretary" in section 6229(e).

Merriam-Webster's Collegiate Dictionary 473 (10th ed. 2002) includes the following definitions for "furnish": "1: to provide with what is needed; *esp*: to equip with furniture [and] 2: SUPPLY, GIVE". As this Court has previously noted: "[T]he longstanding definition of the word 'filed' as used in Federal statutes is 'delivered'." *Hotel Equities Corp. v. Commissioner*, 65 T.C. 528, 531 (1975), *aff'd*, 546 F.2d 725 (7th Cir. 1976). Considering these definitions, we find that the words "furnish" and "file" are sufficiently similar that (barring any further clarification provided in the language or legislative history of a statute) the intent of Congress does not clearly prohibit an agency from promulgating regulations which require information to be filed where the relevant statute provides that the information must be "furnished". The legislative history is of no aid on this issue. The House, Senate, and House conference reports pertaining to the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97–248, sec. 402(a), 96 Stat. at 648, which enacted section 6229(e), as well as the reports pertaining to the amendments to section 6229, contain no discussion of section 6229(e). In addition, section 6229(e) has not been amended since its enactment. Following this logic, section 6229(e) does not clearly bar the Secretary from promulgating section 301.6229(e)–1T, Temporary Proced. & Admin. Regs., *supra*, which requires that identifying information be filed with the Commissioner.

The second issue is whether the regulation is "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. "If the Secretary's construction is reasonable, *Chevron* requires the Court to accept that construction, even if the Secretary's 'reading differs from what the court believes is the best statutory interpretation.'" *Tigers Eye Trading, LLC v. Commissioner*, 138 T.C. 67, 124–125 (2012) (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X*, 545 U.S. 967, 980 (2005)). Given the similarity between the definitions of the words "furnish" and "file" previously discussed, we find that section 301.6229(e)–1T, Temporary Proced. & Admin. Regs., *supra*, is based on a permissible construction of section 6229(e).

We find that section 301.6229(e)–1T, Temporary Proced. & Admin. Regs., *supra*, satisfies both prongs of the *Chevron* analysis. It is thus a valid regulation.

### D. *Conclusion Regarding the Section 6229(e) Issue*

We find that the Gaughfs failed to satisfy the requirements of section 6229(e). We thus hold that the statutory period for assessing tax attributable to partnership items was still open on March 30, 2007 (the day the FPAA was issued), with respect to the Gaughfs.

### III. *Whether, Under Principles of Estoppel, Respondent Should Be Prevented From Asserting the Statutory Period for Assessment Was Open on March 30, 2007*

Petitioner argues that respondent should be estopped from extending the statutory period for assessment or raising the statutory period for assessment issues considered in this case because respondent: (1) effectively entrapped the Gaughfs by delaying publication of materials stating that disregarding a short option position when determining basis in a partnership is improper; [35] (2) delayed in issuing the summons to J&G; (3) withheld and destroyed evidence, including several original Forms SS–4 filed on behalf of the four entities involved in the transaction at issue in this case which were destroyed; (4) delayed trial by asserting that Gaughf Properties omitted income resulting from the expiration of the short currency option or sale of the 7,500 shares of Quanta stock at one point owned by Gaughf Properties; (5) "Lur[ed] the Court into an opinion" on the statutory period for assessment issue but then asserted alternative issues as the centerpiece of his argument; (6) discriminated against the Gaughfs as evidenced by his not conceding this case after the *Highwood Partners* case was conceded; (7) delayed in conceding his original position in order to keep the case open long enough to develop new issues; (8) raised new issues even though evidence in his possession discredited those positions and those positions were frivolous; (9) performed other actions relating to now-conceded issues such as promul-

---

[35] Petitioner points out that the Commissioner did not publish Notice 2000–44, 2000–2 C.B. 255, until September 5, 2000. Citing *Helmer v. Commissioner*, T.C. Memo. 1975–160, petitioner claims that until Notice 2000–44, *supra*, was published, it appeared that short options did not constitute a liability for purposes of determining partnership basis.

gating regulations contrary to court precedent and withholding evidence regarding why those regulations were promulgated; and (10) otherwise delayed trial in this case and caused it to be more expensive than necessary. In addition, petitioner claims that estoppel should apply against respondent with greater force than it applies against a private citizen. Most of these arguments are undeveloped, but we shall attempt to address them all.

Petitioner claims that estoppel should apply against respondent with greater force than against "a private citizen because governmental takings of private property like that pursued here must comport with the Fifth Amendment requirement of due process." We disagree.

The parties have stipulated that the Court of Appeals for the District of Columbia Circuit has appellate jurisdiction in this case. That court has recognized that "The fundamental principle of equitable estoppel applies to government agencies, as well as private parties." *Invs. Research Corp. v. SEC*, 628 F.2d 168, 174 n.34 (D.C. Cir. 1980). However, that court has also recognized that "despite the doctrine's flexibility in disputes between private parties, its application to the government must be rigid and sparing." *ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C. Cir. 1988); *see also Bull S.A. v. Comer*, 55 F.3d 678, 681 (D.C. Cir. 1995). Application of the estoppel doctrine against the Government "generally requires that government agents engage—by commission or omission—in conduct that can be characterized as misrepresentation or concealment, or, at least, behave in ways that have or will cause an egregiously unfair result." *GAO v. GAO Personnel Appeals Bd.*, 698 F.2d 516, 526 (D.C. Cir. 1983). In addition we have recognized that the doctrine of estoppel "is to be applied against the Commissioner only with utmost caution and restraint." *McCorkle v. Commissioner*, 124 T.C. 56, 68 (2005).

We proceed to addressing whether the elements necessary to apply estoppel were satisfied. The essential elements of estoppel are: (1) a false representation was made or a wrongful misleading silence maintained; (2) the error must be in a statement of fact and not in an opinion or a statement of law; (3) the person claiming the benefits of estoppel must be ignorant of the facts; (4) the person claiming the benefits must be adversely affected by the acts or statements of the

person against whom estoppel is claimed; and (5) the person claiming the benefits must have reasonably relied on the acts or statements of the party against whom estoppel is claimed. *Id.*; *Wilkins v. Commissioner*, 120 T.C. 109, 112–113 (2003); *see also ATC Petroleum, Inc.*, 860 F.2d at 1111.

Petitioner takes issue with respondent's years of "misleading silence" and false representations. Petitioner claims that there is "no doubt that the Gaughfs' advisors would not have led the Gaughfs down this *Helmer* path in the Fall of 1999 or filed their returns in April of 2000 had Respondent not delayed issuing Notice 2000–44". Petitioner also takes issue with the amount of time it took respondent to notify the Gaughfs and issue the FPAA after the Gaughf Properties 1999 return was filed. Finally, petitioner faults respondent for the three-year period between the issuance of the FPAA and the trial of this issue, stating that respondent placed witnesses beyond petitioner's reach and destroyed documents during this time, [36] in addition to failing to timely concede certain legal issues in order to gain additional time to develop other arguments.

We first address petitioner's claim that respondent entrapped the Gaughfs by delaying issuance of Notice 2000–44, *supra*. Even if we assumed this delay to be a wrongful misleading silence, such silence would still pertain to an issue of law (treatment of short options as they relate to basis in a partnership) as opposed to an issue of fact. Because the doctrine of estoppel is not applicable in a case of misleading statements of law, *McCorkle v. Commissioner*, 124 T.C. at 68, we reject petitioner's argument on this point.

We next address whether respondent's actions taken in the period between when the Gaughf Properties 1999 return was filed and the FPAA was issued satisfy the elements of estoppel. Again, even if we assumed that respondent's failure to issue the FPAA sooner was a wrongful misleading silence, such silence would still pertain to an issue of law (whether the statutory period for assessment was open) as opposed to an issue of fact. We also note that respondent contacted the Gaughfs several times during this period, including shortly after receipt of the J&G documents, to advise the Gaughfs of

---

[36] Petitioner also claims respondent drafted self-serving regulations pertaining to conceded issues during this time.

the investigation into J&G. We therefore reject petitioner's argument on this point.

We next address petitioner's contention that respondent withheld and destroyed evidence and placed witnesses beyond the reach of petitioner. Respondent stipulated that he destroyed original Forms SS–4 filed on behalf of the four entities involved in the transaction at issue at some point after April 17, 2003. However, there was no showing that destroying those documents years after they were filed was irregular, or that respondent was investigating any of the entities at the time the Forms SS–4 were destroyed. In addition, the loss of the original Forms SS–4 did not prejudice petitioner, as copies existed and were introduced into evidence. No evidence that other relevant documents were withheld or destroyed exists; petitioner merely speculates that other documents may have been.[37] The argument that respondent placed witnesses beyond the reach of petitioner is not sufficient to invoke the doctrine of estoppel, as petitioner has alleged no misstatement of fact in connection with the unavailable witnesses. The witnesses petitioner complains of were unavailable on account of criminal investigations, health issues, or petitioner's inability to find them. As a result, we reject petitioner's argument on this point. We note that if petitioner later discovers evidence proving respondent destroyed or withheld relevant documents, petitioner has other avenues of recourse available.

We next address petitioner's contentions that respondent delayed trial by raising or not timely conceding a multitude of issues and "lured" this Court into writing an opinion on the statutory period for assessment issue but then changed his arguments. Many of these arguments we have already rejected when we allowed respondent to amend his answer to raise additional issues. We note that respondent has shown a willingness to concede issues in this case once having received evidence sufficient to show that no possible issue existed. Given the confusing and inconsistent positions taken

---

[37] Petitioner states that other than the Forms SS–4 which were destroyed, "No one can say what else has been lost." The only specific argument petitioner makes with respect to this statement regards information potentially provided to respondent by KPMG, an argument which we have already found to be contrary to the evidence presented.

We also note that while respondent destroyed certain tax returns of entities related to the Gaughfs but not discussed in this Opinion there was no showing that the destruction of these returns prejudiced petitioner in any way.

by Gaughf Properties, the Gaughfs, and related entities on their tax returns, we do not blame respondent for his reluctance to concede some issues until he received evidence sufficient to confirm that his stated argument was incorrect.[38] We also believe that: (1) respondent's decisions to raise or concede certain issues are more analogous to opinions or statements of law rather than statements of fact; and (2) that respondent's actions did not amount to false representation or misleading silence. We therefore reject petitioner's argument on this point.

We reject petitioner's argument regarding promulgation of regulations, on the ground that the issuance of a regulation does not amount to a statement of fact; rather, the regulation is a statement of law. With regard to the underlying reason for issuing regulations,[39] we disregard this issue on the ground that petitioner has shown no reliance on any underlying reasons for issuance. We also note that no new regulations were promulgated after the FPAA with respect to section 6229(e), the section under which we have decided this case. With regard to the new section 6501(e)(1)(A) regulation, section 301.6501(e)–1, Proced. & Admin. Regs., we also note that although the Supreme Court rejected the regulation (on grounds that the statute it applied had already been interpreted by that Court and no different, consistent construction was available for adoption by the Commissioner), we do not believe it was promulgated in bad faith. *See United States v. Home Concrete & Supply, LLC*, 566 U.S. ____, 132 S. Ct. 1836.

We finally address petitioner's argument that respondent discriminated against the Gaughfs by not conceding this case

[38] Petitioner harps on the fact that respondent amended his answer (in part) to raise the issue of whether Gaughf Properties omitted income resulting from the sale of the 7,500 shares of Quanta stock at one point owned by Gaughf Properties. Petitioner states that respondent knew this argument was entirely incorrect because the J&G documents in respondent's possession contained a trade confirmation that the 7,500 shares were sold by Bodacious rather than Gaughf Properties. However, we recognize that Gaughf Properties did not file any information regarding distribution of Quanta stock to a partner upon liquidation. In addition, respondent conceded this issue less than a month after amending his answer (presumably upon receiving additional evidence that his position was incorrect). Given the confusion resulting from Gaughf Properties' tax return and respondent's willingness to concede the issue before trial, we do not believe respondent raised the issue in bad faith. Even if respondent did, petitioner has not shown that it was prejudiced by the fact this issue was raised, that it was ignorant of the facts regarding this issue, or that respondent's raising this issue amounted to a statement of fact rather than a statement of law.

[39] Petitioner claims respondent will not reveal the reasons for issuing certain regulations.

after the *Highwood Partners* case was conceded. We find this argument inapplicable in an estoppel context because the decision to concede a case is analogous to an opinion or legal statement rather than a factual statement, that no false representation or misleading silence resulted, and that there was no showing that the Gaughfs reasonably relied on the concession.[40] In addition, "It has long been the position of this Court that our responsibility is to apply the law to the facts of the case before us and determine the tax liability of the parties before us; how the Commissioner may have treated other taxpayers has generally been considered irrelevant in making that determination." *Davis v. Commissioner*, 65 T.C. 1014, 1022 (1976). We therefore reject petitioner's argument on this point.

In sum, petitioner has alleged that respondent has caused a multitude of delays, "lost documents, unavailable witnesses, faded memories, [and] horrible expense[s]" among other things. However, petitioner, Gaughf Properties, the Gaughfs, and other relevant entities are responsible for many of the delays and changed positions taken by respondent through their implementation of a complex transaction to increase basis in a partnership, their inconsistent and incomplete reporting of facts regarding the transaction, and their failure to list the Gaughfs as indirect partners in Gaughf Properties.[41] These facts provide additional support for our decision to reject all of petitioner's estoppel arguments based on delay of the case.

Considering the facts and law previously discussed, we reject all of petitioner's arguments regarding the estoppel

---

[40] Even addressing this issue in a constitutional context we do not believe petitioner would prevail. To prevail on an allegation of discrimination a taxpayer must meet both requirements of a two-pronged standard. The taxpayer must first demonstrate that others similarly situated have not been singled out for adverse treatment, and second, that the Commissioner singled it out for irrational or impermissible reasons such as race, religion, or the desire to prevent the exercise of constitutional rights. *Penn-Field Indus., Inc. v. Commissioner*, 74 T.C. 720, 723 (1980); *Slovacek v. United States*, 40 Fed. Cl. 828, 832 (1998). Petitioner has not argued any facts which would tend to satisfy the second prong and has produced insufficient evidence to satisfy the first prong.

[41] As previously discussed, the failure to list the Gaughfs as indirect partners on the Gaughf Properties partnership return was not a violation of any Code section or regulation; however, it did serve to keep the statutory period for assessment open under sec. 6229(e). While not a violation of law, the failure to report the Gaughfs as indirect partners almost certainly delayed any investigation by respondent. The fact that sec. 6229(e) holds the statutory period for assessment open (potentially indefinitely) when an indirect partner is not reported on a partnership return implicitly recognizes that failure to list an indirect partner may significantly delay any investigation by the Commissioner.

issue and find that the doctrine of estoppel does not preclude respondent's assertion that the statutory period for assessment remained open on the date the FPAA was issued.

IV. *Conclusion*

We find the statutory period for assessing tax attributable to partnership items was open under section 6229(e) with respect to the Gaughfs on March 30, 2007, the date the FPAA was issued. We also find that the doctrine of estoppel does not preclude respondent's assertion that the statutory period for assessment was open on that date.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

> *An appropriate order will be issued as to the period of limitations issue.*