# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 14, 2013       Decided December 27, 2013

No. 13-1026

GAUGHF PROPERTIES, L.P., BALAZS VENTURES, LLC,
A PARTNER OTHER THAN THE TAX MATTERS PARTNER,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLEE

On Appeal from the Order
of the United States Tax Court

*David D. Aughtry* argued the cause for the appellant. *William E. Buchanan* was on brief.

*Thomas A. Cullinan* and *N. Jerold Cohen* were on brief for *amicus curiae* West Ventures, L.P. in support of the appellant.

*Ivan C. Dale*, Attorney, United States Department of Justice, argued the cause for the appellee. *Tamara W. Ashford*, Principal Deputy Assistant Attorney General, and *Gilbert S. Rothenberg* and *Michael J. Haungs*, Attorneys, were on brief.

Before:  GARLAND, *Chief Judge*, and HENDERSON and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*:  Gaughf Properties, L.P. and its partners, Balazs Ventures, LLC and Gaughf Enterprises, LLC, (collectively, Appellants)[1] appeal the tax court's decision, holding that the period to assess taxes for tax year 1999 against Andrew Jackson Gaughf, Jr. (Jack Gaughf) and his wife, Nan Gaughf, remained open as of March 30, 2007, when the Internal Revenue Service (IRS) issued a Notice of Final Partnership Administrative Adjustment (FPAA) to Gaughf Properties, L.P. *Gaughf Props., L.P. v. Comm'r*, 139 T.C. 219 (2012). In so holding, the tax court determined that (1) the Gaughfs' tax liability came within the unidentified partner exception to the general three-year statute of limitations under I.R.C. section 6229(e) because the Gaughfs were not identified as indirect partners of Gaughf Properties, L.P. in its 1999 return[2] and (2)

---

[1]Although the cover to the Appellants' brief refers to a single "Appellant" designated "Gaughf Properties L.P., Balazs Ventures, LLC, a Partner Other than the Tax Matters Partner," their Certificate as to Parties, Rulings, and Related Cases identifies as parties all three of the entities enumerated in the text, as does their petition for interlocutory review. *See* Brief for the Appellant at i; Petition for Permission to Appeal, No. 12-8017 (D.C. Cir. Nov. 19, 2012).

[2]"The term 'indirect partner' means a person holding an interest in a partnership through 1 or more pass-thru partners." I.R.C. § 6231(a)(10).  A "pass-thru partner" is "a partnership,

information identifying them as indirect partners was not otherwise timely "furnished to the Secretary [of the Treasury]" (Secretary) so as to trigger the one-year limitation period provided in I.R.C. section 6229(e) (flush language). We agree with both of the tax court's determinations and, accordingly, affirm its judgment.

## I.

The material facts are undisputed. In 1999, on the advice of accounting firm KPMG, Jack Gaughf contacted Jenkens & Gilchrist (J&G), a law firm, "to set up a tax advantage" to reduce the capital gain taxes the Gaughfs would otherwise incur when they sold 150,283 shares of stock they held in Quanta Services, Inc. (Quanta). Trial Tr. 215, *Gaughf Props., L.P. v. Comm'r*, No. 18298-07 (T.C. May 27, 2012) (Trial Tr.) (5/17/2010 testimony of Jack Gaughf). J&G suggested using a "Section 754 step up"[3] in order to inflate the cost basis of the Quanta stock and thereby generate a capital loss

---

estate, trust, S corporation, nominee, or other similar person through whom other persons hold an interest in the partnership." *Id*. § 6231(a)(9). Here, Bodacious, Inc. was the pass-thru partner through which Jack Gaughf held a partnership interest in Gaughf Properties, L.P. at the time of the partnership's liquidation. Because Jack and Nan Gaughf were both involved as principals in the relevant entities and transactions and filed a joint 1999 income tax return, for convenience we treat them, as did the tax court, as joint partners.

[3]I.R.C. section 754 "permits taxpayers pursuant to [I.R.C.] § 743(b) to take a step-up in basis resulting from the transfer of interest in a partnership by sale or exchange." *Atl. Veneer Corp. v. Comm'r*, 812 F.2d 158, 158 (4th Cir. 1987).

instead of a capital gain.[4]  JA 1197 (J&G Investor Profile of Jack Gaughf).  Accordingly, J&G guided the Gaughfs through the set-up of a "Son of Boss" tax shelter.[5]

### A.  The Corporate Set-Up

Pursuant to J&G's advice the Gaughfs directed their lawyer, Maurice Holloway, to form four legal entities—three corporations and a partnership, all formed under South Carolina law—which Holloway did in September 1999, as follows: (1) Gaughf Enterprises, LLC, a limited liability corporation wholly owned by Jack Gaughf; (2) Balazs Ventures, LLC, a limited liability corporation wholly owned by Nan Gaughf; (3) Gaughf Properties, L.P., a limited partnership consisting of partners Gaughf Enterprises, LLC and Balazs Ventures, LLC (pursuant to a partnership agreement signed on behalf of the corporate partners by their sole owners—Jack Gaughf and Nan Gaughf, respectively); and (4) Bodacious, Inc., a corporation of which Jack Gaughf

---

[4]According to the tax court, had the Gaughfs sold the stock without a tax shelter, they would have been taxed on a capital gain of approximately $4.3 million instead of incurring a capital loss. 139 T.C. at 227.

[5]The Son of Boss tax shelter "is a 'variant of the Bond and Options Sales Strategy ("BOSS") shelter' " and "involves 'the transfer of assets along with significant liabilities to a partnership, with the goal of increasing basis in that partnership.' "  *106 Ltd. v. Comm'r*, 684 F.3d 84, 86 n.1 (D.C. Cir. 2012) (quoting *Napoliello v. Comm'r*, 655 F.3d 1060, 1062 (9th Cir. 2011)) (quotation marks and brackets omitted).  Because the liabilities are not completely fixed at the time of the transfer, "the partnership ignores them in computing basis . . . result[ing] in high-basis assets that produce large tax—but not out-of-pocket—losses."  *Id.* (quotation marks omitted).

was 100% owner and president. Holloway filed a Form SS-4 ("Application for Employer Identification Number") on behalf of each of the four entities with the IRS Service Center in Atlanta, Georgia. The SS-4 forms identified the "principal officer, general partner, grantor, owner, or trustor" of Gaughf Enterprises, LLC, Gaughf Properties, L.P. and Bodacious, Inc. as "Andrew Jackson Gaughf, Jr." and of Balazs Ventures, LLC as "Nan Gaughf"; each filing further identified the "[r]eason for applying" as "[s]tarted a new business" and listed the Gaughfs' personal address in Pickens, South Carolina as the entity's "[m]ailing address." JA 522, 529, 530, 526.

Jack Gaughf set up three separate investment accounts with Deutsche Bank Alex. Brown LLC (Alex. Brown), an affiliate of Deutsche Bank AG (Deutsche Bank), one each in the name of Gaughf Enterprises, LLC, Gaughf Properties, L.P. and Bodacious, Inc. On November 24, 1999, $90,000 was deposited into Gaughf Enterprises, LLC's Alex. Brown account. Five_days later, on November 29, 1999, Gaughf Enterprises, LLC entered into two currency option transactions with Deutsche Bank: (1) a "long" option under which Gaughf Enterprises, LLC agreed to pay Deutsche Bank an up-front premium of $4,500,000 on December 1, 1999 and Deutsche Bank agreed to pay Gaughf Enterprises, LLC a $9,000,000 payout on December 22, 1999 if the Japanese yen were trading at more than 105.76 yen to the U.S. dollar and (2) a "short" option under which Deutsche Bank agreed to pay Gaughf Enterprises, LLC a $4,455,000 premium on December 1, 1999 and Gaughf Enterprises, LLC agreed to pay Deutsche Bank $8,910,000 on December 22, 1999 if the Japanese yen were trading at more than 105.78 yen to the dollar.

The next day, November 30, 1999, Gaughf Enterprises, LLC transferred the currency options to Gaughf Properties, L.P. as a contribution to capital. The same day, $45,000—the difference between the long and short option premiums—was transferred from Gaughf Enterprises, LLC's Alex. Brown account to Deutsche Bank. The remaining $45,000 in Gaughf Enterprises, LLC's Alex. Brown account was transferred to Gaughf Properties, L.P.'s Alex. Brown account—also as a contribution to capital—except for $900 which, under an agreement between Gaughf Enterprises, LLC and Bodacious, Inc., was deemed a contribution to capital by Bodacious, Inc. On December 20, 1999, the two Japanese currency options Gaughf Properties, L.P. held expired unexercised, with no pay-out to or by either Gaughf Properties, L.P. or Deutsche Bank. The long and short of it is that the only money that changed hands in connection with the options was the $45,000 premium differential Gaughf Enterprises, LLC had paid Deutsche Bank on November 30, 1999.

On December 27, 1999, both Gaughf Enterprises, LLC and Balazs Ventures, LLC signed their general partnership interests in Gaughf Properties, L.P. over to Bodacious, Inc. "as a substitute general partner," while Gaughf Enterprises, LLC—but not Balazs Ventures, LLC—assigned its limited partnership interest as well to Bodacious, Inc. Also on December 27, 1999, the Gaughfs signed a liquidation agreement on behalf of Bodacious, Inc. and Balazs Ventures, LLC, terminating Gaughf Properties, L.P. and distributing "[a]ny and all assets of the Partnership held by the Partnership as of the date of dissolution" to its partners in accordance with an attached schedule, which gave Bodacious, Inc. 99.6% of the partnership assets and Balazs Ventures, LLC the remaining 0.4%. JA 1080. As a result of the liquidation, the cash in Gaughf Properties, L.P.'s Alex. Brown account—consisting of Gaughf Enterprises, LLC's $45,000 capital

contribution plus accrued income thereon—was distributed to Bodacious, Inc. on December 29, 1999.[6]

### B. The Pay-Offs

On November 19, 1999, Jack Gaughf transferred 142,783 of his 150,283 shares of Quanta stock from his investment account with Edward D. Jones & Co., L.P. (Edward Jones) to an Edward Jones account in Bodacious, Inc.'s name, which sold the shares on December 9, 1999 for net proceeds of $4,418,243.[7] On December 14, 1999, Jack Gaughf transferred from his account to Bodacious, Inc.'s account an additional 2,575 shares of Quanta stock, which Bodacious, Inc. transferred to Gaughf Properties, L.P.'s Edward Jones account on December 20, 1999. Also on December 20, 1999, Jack Gaughf transferred the last 4,925 Quanta shares in his Edward Jones account directly to Gaughf Properties, L.P.'s Edward Jones account. After the December 27, 1999 liquidation of Gaughf Properties, L.P., the 7,500 Quanta shares then held by Gaughf Properties, L.P.—the 2,575 from Bodacious, Inc. plus the 4,925 directly from Jack Gaughf—were transferred to Bodacious, Inc.'s Edward Jones account on December 30, 1999 and sold the next day for net proceeds of $207,003.

---

[6]Notwithstanding the terms of the liquidation agreement, Balazs Ventures, LLC apparently did not receive its pro rata .4% share of the partnership assets upon the dissolution.

[7]Sometime in "late [19]99," Jack Gaughf transferred all of his Quanta stock from his Smith Barney account to an Edward Jones brokerage account and authorized the latter to sell the stock. Trial Tr. 224 (5/17/2010 testimony of Jack Gaughf).

On January 31, 2000, J&G gave Jack Gaughf a written opinion that the "basis in [his] interest in the Partnership after the contribution of the Options should include the cost of the Long Option contributed, *without adjustment for the Short Option,*" that "[t]he liquidation of the Partnership should result in an allocation of the Partnership's 'outside' basis to the properties distributed by it in liquidation"[8]—that is, to the $45,000 distribution and the 7,500 Quanta shares—and "disposition by [Bodacious, Inc.] of all of the Shares received in liquidation of the Partnership should result in a long term capital loss." JA 878 (emphasis added). Armed with J&G's letter, KPMG's tax department filed separate income tax returns for tax year 1999 on behalf of the Gaughfs (filing jointly), Bodacious, Inc. (filing as an S corporation) and Gaughf Properties, L.P. The Gaughfs reported a long-term capital loss of $119,919 attributable to "Bodacious, Inc.," JA 591, which was reported on Bodacious, Inc.'s 1999 return as the loss attributable to the difference between the Quanta stock sale price of $4,625,266 and its reported "cost" of $4,745,185.

## C. The Aftermath

In May 2004, responding to a subpoena first issued in June 2003 during an IRS audit of J&G, J&G delivered to the IRS a list of clients, which list included Jack Gaughf's name, address and taxpayer identification number. Then, in July 2004, J&G turned over to the IRS some 1300 compact discs of documents that included approximately 480 document pages covering the various transactions involving the Gaughfs and their business entities. After the IRS advised the Gaughfs

---

[8]"A partner's tax basis in a partnership interest [is] called 'outside basis' . . . ." *United States v. Woods*, 134 S. Ct. 557, 561 (2013).

and Gaughf Properties, L.P. that their 1999 tax returns were being investigated, on April 12 and May 10, 2006, respectively, the Gaughfs and an IRS agent signed a Form 872-1 ("Consent to Extend the Time to Assess Tax As Well As Tax Attributable to Items of a Partnership") extending the limitations period for assessing 1999 tax-year liabilities against the Gaughfs until April 16, 2007. On May 18, 2006, the IRS issued a Notice of Beginning of Administrative Proceeding regarding partnership items related to Gaughf Properties, L.P.'s 1999 tax return. The IRS issued its FPAA on March 30, 2007, determining, inter alia, that Gaughf Properties, L.P. "was a sham [and] lacked economic substance" and "a principal purpose" of its formation and the transactions related thereto was "to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of [the [partnership provisions] of the Internal Revenue Code." JA 1297. The FPAA further determined the partnership should be "disregarded," all of its transactions be attributed to "its purported partners" and the long option's $4,500,000 basis be offset by the $4,455,000 short option's premium cost. *Id.*

In response, on August 15, 2007, Balazs Ventures, LLC filed in the tax court a Petition for Readjustment of Partnership Items pursuant to I.R.C. section 6226 on behalf of Gaughf Properties, L.P., contending the FPAA was untimely because it issued after the three-year limitations period set out in I.R.C. section 6229(a) had expired. The IRS subsequently asserted a number of defenses, including I.R.C. section 6229(e)'s unidentified partner exception to the three-year statute of limitations. The IRS contended that under the exception, the Gaughfs' tax assessment period remained open, at least until the Form 872-1 was signed extending the assessment period to April 16, 2007, because Gaughf Properties, L.P.'s 1999 tax return did not identify the Gaughfs

as indirect partners and treated partnership items[9]—namely, the contributed Japanese currency options—inconsistently with their treatment on the Gaughfs' joint personal return, without notifying the IRS of the inconsistency.

The tax court set the statute-of-limitations issue for a preliminary trial, adjudicating two questions: (1) whether, when the FPAA issued on March 30, 2007, the statutory period for assessing the Gaughfs' tax liability attributable to partnership items remained open pursuant to section 6229(e)'s unidentified partner exception and (2) if so, whether the IRS was estopped from asserting the exception. For the purpose of the trial, the parties stipulated to most of the facts, including that "the basis in the Quanta stock was 'incorrectly overstated.' " 139 T.C. at 225.

The tax court conducted a bench trial in Atlanta in May 2010. On September 10, 2012, the court issued its decision, holding that (1) the assessment period was extended under section 6229(e)'s exception and (2) the IRS was not estopped from so asserting.[10] 139 T.C. at 220. Gaughf Properties, L.P. sought an interlocutory appeal of the tax court's timeliness decision pursuant to Tax Court Rule 193 and I.R.C. section

---

[9]"The term 'partnership item' means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." I.R.C. § 6231(a)(3); *see* Treas. Reg. § 301.6231(a)(3)-1 (regulatory definition).

[10]The estoppel holding is not appealed.

7482(a)(2).[11]  On November 8, 2012, the tax court granted the motion.  Gaughf Properties, L.P., Balazs Ventures, LLC and Gaughf Enterprises, LLC, then filed a petition in this court for interlocutory appeal which we granted on February 1, 2013. *In re Gaughf Props.*, No. 12-8017 (D.C. Cir. Feb. 1, 2013).

## II.

The court has jurisdiction of the interlocutory appeal under I.R.C. section 7482(a)(2).  We review the tax court's decision " 'in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury.' " *Petaluma FX Partners, LLC v. Comm'r*, 591 F.3d 649, 652 (D.C. Cir. 2010) (quoting I.R.C. § 7482(a)(1)), *abrogated in other respect*, *United States v. Woods*, 134 S. Ct. 557 (2013).  Accordingly, "[w]e review the Tax Court's legal conclusions de novo and its factual indings for clear error." *Barnes v. Comm'r*, 712 F.3d 581, 582 (D.C. Cir. 2013).  The sole question on appeal is a legal one: whether the assessment period for the Gaughfs' 1999 return remained open as of March 30, 2007 so that the FPAA issued on that date was timely under section 6229.  We conclude that it did remain open as of March 30, 2007.

---

[11]Tax Court Rule 193 provides in relevant part: "For the purpose of seeking the review of any order of the Tax Court which is not otherwise immediately appealable, a party may request the Court to include, or the Court on its own motion may include, a statement in such order that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation." *See also* I.R.C. § 7482(a)(2) (authorizing court of appeals "in its discretion" to take interlocutory appeal upon application filed within ten days after such order issues).

The IRS generally has three years to assess "any tax imposed . . . with respect to any person which is attributable to any partnership item" after the later of either the filing deadline for the applicable tax year or the actual date of filing. I.R.C. § 6229(a). The period may be extended by agreement of the parties—provided they do so "before the expiration of [the three-year] period." *Id*. § 6229(b). The three-year deadline is subject to several statutory exceptions—including the "[u]nidentified partner" exception in section 6229(e), which provides in relevant part:

> (e) . . . If –
>
>> (1) the name, address, and taxpayer identification number of a partner are not furnished on the partnership return for a partnership taxable year, and
>>
>> (2) (A) . . .
>>
>>> (B) the partner has failed to comply with subsection (b) of section 6222 (relating to notification of inconsistent treatment) with respect to any partnership item for such taxable year,
>
> the period for assessing any tax . . . which is attributable to any partnership item (or affected item) for such taxable year shall not expire with respect to such partner before the date which is 1 year after the date on which the name, address, and taxpayer identification number of such partner are furnished to the Secretary.

I.R.C. § 6229(e).[12]  The tax court concluded the period for assessing a tax on the Gaughfs attributable to partnership items—in particular, the contributions of the Quanta shares and the foreign currency options—remained open beyond the general three-year assessment period because both of the section 6229(e) requirements were satisfied: (1) Gaughf Properties, L.P.'s 1999 income tax return failed to furnish the required information identifying the Gaughfs as indirect partners therein, 139 T.C. at  234; and (2) the Gaughfs failed to comply with section 6222(b)'s requirement that they notify the IRS that their 1999 tax return treated the partnership items in a manner inconsistent with the items' treatment in the Gaughf Properties, L.P. return, *id.* at 237.  The tax court further concluded that at no time before the parties signed the 2006 agreement to extend the assessment period was the IRS otherwise "furnished" information regarding the Gaughfs' indirect partnership status so as to trigger the one-year limitation period provided in section 6229(e).  The Appellants challenge each determination.

## A. Inconsistent Treatment of Partnership Items

First, the Appellants assert that the Gaughfs' tax assessment is not excepted under section 6229(e) from the general three-year statute of limitations because, they claim, the Gaughfs did not "fail[] to comply with subsection (b) of section 6222 (relating to notification of inconsistent treatment) with respect to any partnership item for such

---

[12]Internal Revenue Code section 6222(b), referenced in section 6229(e)(2)(B), is discussed *infra* Part II.A.

taxable year." I.R.C. § 6229(e)(2)(B).[13] Section 6222 provides in relevant part:

> (a) In general.—A partner shall, on the partner's return, treat a partnership item in a manner which is consistent with the treatment of such partnership item on the partnership return.
>
> (b) Notification of inconsistent treatment.—
>
> (c) In general.—In the case of any partnership item, if—
>
> > (A)(i) the partnership has filed a return but the partner's treatment on his return is (or may be) inconsistent with the treatment of the item on the partnership return, or
> >
> > > (ii) the partnership has not filed a return, and
> >
> > (B) the partner files with the Secretary a statement identifying the inconsistency,
>
> subsection (a) shall not apply to such item.

---

[13]The Appellants also argue that the IRS tax return forms, instructions and regulations do not require reporting the names of indirect partners such as the Gaughfs—only partnership "members." Br. for the Appellant 45-46. The applicable regulation in effect in 1999, however, expressly provided that "[a] partner who is not properly identified on the partnership return (*including an indirect partner*) remains an unidentified partner for purposes of section 6229(e) until identifying information is furnished as provided in § 301.6223(c)-1T." Treas. Reg. § 301.6229(e)-1T (1999) (emphasis added).

I.R.C. § 6222(a)-(b). The Appellants contend that a section 6222(b)(1) statement was not required because there was no inconsistency between the Gaughfs' treatment of any partnership item and Gaughf Properties, L.P.'s return's treatment thereof. We agree with the tax court that the two returns' treatment of partnership items was inconsistent—in at least two respects.

The first partnership item the two returns treated differently is the partner's basis in the contributed property— namely, the two foreign currency options. *See* Treas. Reg. § 301.6231(a)(3)-1(a)(4)(i) & (c)(2)(iv) ("[p]artnership items" include "[i]tems relating to . . . [c]ontributions to the partnership," including determining "[t]he basis to the partnership of contributed property"). Gaughf Properties, L.P.'s 1999 return reported a partnership loss from the expired options of $45,000. The loss was reported as a single item; it therefore assumed that Gaughf Properties, L.P.'s inside basis in its then-worthless options was likewise $45,000, the amount that was lost. *See United States v. Woods*, 134 S. Ct. at 561 ("Tax basis is the amount used as the cost of an asset when computing how much its owner gained or lost for tax purposes when disposing of it. . . . '[I]nside basis' [is] the partnership's basis in its own assets . . . ."). The inside basis in turn rested on the assumption that the partner's basis in the contributed property was $45,000. *See* I.R.C. § 723 (inside basis of "property contributed to a partnership by a partner shall be the adjusted basis of such property to the contributing partner at the time of the contribution"). In contrast, the Gaughfs' 1999 return reported an outside basis in Gaughf Properties, L.P.—that is, the Gaughfs' tax basis in their partnership interest in Gaughf

Properties, L.P., *see supra* note 8—of over $4.5 million,[14] JA 582, which amount was necessarily derived from the Gaughfs' basis in the contributed options and assumed a basis of $4.5 million—the value of the long option without any reduction for the short option. *See* I.R.C. § 722 (partner's outside basis of "partnership acquired by a contribution of property, including money, to the partnership shall be the amount of such money and the adjusted basis of such property to the contributing partner at the time of the contribution"); *Woods,* 134 S. Ct. at 561 (" '[O]utside basis' . . . is tied to the value of any assets the partner contributed to acquire the interest."). Regardless of which treatment of the partnership item was correct—indeed even if both had been correct—the returns' widely disparate treatment of the partner's basis in the contributed property constituted inconsistent treatment of a partnership item that triggered the section 6222(b) filing requirement.

The second inconsistency lies in the two returns' differing treatment of the nature of the contributed property—

---

[14]Whether, or under what circumstances, the inconsistent treatment of an outside basis—which is determined at the individual partner rather than the partnership level, *Petaluma*, 591 F.3d at 654—can itself support an unidentified partner exception to the statute of limitations is an issue we need not and do not reach. *See* Br. for the Appellant 48 (arguing " 'outside basis' that drives the partners' returns constitutes a partner-level 'affected item' beyond partnership-level jurisdiction"). *But see Woods*, 134 S. Ct. at 563-64 (holding court conducting partnership-level proceeding— "to adjust 'partnership items,' [i.e.,] those relevant to the partnership as a whole"—has "jurisdiction to determine the applicability of any penalty that could result from an adjustment to a partnership item, even if imposing the penalty would also require determining affected or non-partnership items such as outside basis").

in particular, whether the long and short currency options constituted a single integrated transaction or two separate transactions. Like the basis of the contributing partner in the property, a contribution's underlying nature is a partnership item. *See* Treas. Reg. § 301.6231(a)(3)-1(a)(4)(i) & (a)(3)-1(b) (" 'partnership item' includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc."). The Gaughfs' and Gaughf Properties, L.P.'s returns treated the contributed options as constituting two different transactions. Because it reported a $4.5 million basis in the partnership, the Gaughfs' return necessarily assumed the long and short options were separate contributions of property (or it ignored the short option contribution altogether). In contrast, Gaughf Properties, L.P.'s return assumed the currency options constituted a single, integrated transaction because it reported a net loss of $45,000—the difference between the two premiums—rather than separate gains and losses for each option. *See generall*y I.R.C. § 988 ("Treatment of certain foreign currency transactions").

Because "[i]n the case of [these two] partnership item[s]," the Gaughfs' "treatment on [their] return is (or may be) inconsistent with the treatment of the item[s] on the partnership return," I.R.C. § 6222(b)(1)(A)(i), and the Gaughfs did not file a Form 8082 "Notice of Inconsistent Treatment," they "failed to comply with subsection (b) of section 6222," *id*. § 6229(e)(2)(B); *see* 139 T.C. at 237. Accordingly we conclude, as did the tax court, that their assessment period is excepted under section 6229(e) from the general three-year statute of limitations established in section 6229(a).

### B. *"Furnished" Additional Partnership Information*

The Appellants also contend that, even if the Gaughfs were unidentified partners under section 6229(e), the FPAA was untimely because it did not issue (nor was an extension agreement signed) until after "the date which is 1 year after . . . the name, address, and taxpayer identification number of such partner are furnished to the Secretary"—on which date the assessment period expires under section 6229(e) even when the unidentified partner exception applies. They assert that, although the indirect partner status information was "not furnished on" the 1999 Gaughf Properties, L.P. return under section 6229(e)(1), the information was nonetheless adequately "furnished to the Secretary" through other documents the IRS received—namely, (1) the four individual entities' SS-4 forms, filed September 27 to October 1, 1999, which identified either Jack or Nan Gaughf as the principal of each of Gaughf Properties, L.P.'s partners and could be cross-referenced through the 1999 tax returns; and (2) the 1300 compact discs of documents (including what the Appellants describe as a "480-page gold mine of Gaughf information," Br. for the Appellant 43) given to the IRS by J&G in 2004. None of these documents "furnish[ed]" the required information so as to satisfy section 6229(e).

Under the temporary IRS regulation in effect in 1999, a "statement [furnishing 'additional information regarding partners' to the IRS] shall generally be filed with the service center with which the partnership return is filed" and it must

> (i) Identify the partnership, each partner for whom information is supplied, and the person supplying the information by name, address, and taxpayer identification number;

(ii) Explain that the statement is furnished to correct or supplement earlier information with respect to the partners in the partnership;

(iii) Specify the taxable year to which the information relates;

(iv) Set out the corrected or additional information[;] and

(v) Be signed by the person supplying the information.

Treas. Reg. § 301.6223(c)-1T(b)(2)-(3).[15]  The Appellants do not dispute that the documents they point to failed to comply with the regulation's literal requirements.  Instead, they challenge the regulation itself—to no avail.

The Appellants argue that the regulation's requirements are inconsistent with the language of I.R.C. section 6229(e). We review a regulation under the familiar two-step framework set out in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Mayo Found. for Med. Educ. & Research v. United States*, 131 S. Ct. 704, 711 (2011).  Under *Chevron* step 1, we ask "whether Congress has 'directly addressed the precise question at issue.' " *Id.* (quoting *Chevron*, 467 U.S. at 843). If so, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43.  But "if

---

[15]Temporary regulation 301.6223(c)-1T, in effect at the time the 1999 return was filed, has since been adopted in permanent form. *See* Unified Partnership Audit Procedures, 66 Fed. Reg. 50,541, 50,548-49 (2001) (codified at Treas. Reg. § 301.6223(c)-1).

the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id*. at 843. Applying *Chevron* here, we uphold the regulation.

The Appellants claim the statute's phrase "are furnished" is plainly broad and necessarily encompasses "actual notice"—which they claim the SS-4 forms and the compact discs provided. In support, they note that the Congress "chose the passive verb 'are furnished' and imposed no limitation as to who furnishes the taxpayer information to the Secretary, where the information is furnished to the Secretary, or when the information is furnished to the Secretary." Br. for the Appellant 31. In other words, I.R.C. section 6229(e) "is silent or ambiguous with respect to the specific issue" of how, when, where or by whom additional partnership information must be furnished. *See Chevron*, 467 U.S. at 843. Under *Chevron* step 2, therefore, the Secretary may fill the gap the Congress left and the regulation is entitled to deference. *See Mayo Found.*, 131 S. Ct. at 713 (" 'The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.' " (quoting *Chevron*, 467 U.S. at 843) (brackets omitted)). In promulgating section 301.6223(c)-1T(b)(2)-(3), the Secretary filled the gap in a reasonable fashion. The regulation's terms ensure that the additional partnership information reaches the particular IRS center where the relevant return was filed and that it includes all of the essentials: the identity of the partners, the nature of the information, the applicable tax year, the additional partnership information itself and the identity of the filer. *See* Treas. Reg. § 301.6223(c)-1T(b)(2), (b)(3)(i)-(v). "Regulation, like legislation, often requires drawing lines." *Mayo Found.*, 131 S. Ct. at 715. The Secretary's lines are

reasonably drawn.  Indeed, the Appellants' alternative—that the IRS be charged with actual notice of any information that has passed into its possession at any place or time, in any form or by any means—seems at best impractical.  While the regulation provides that the IRS "*may* use other information in its possession," it also makes clear the IRS "is not *obligated* to search its records for information not expressly furnished under [the regulation]."  Treas. Reg. § 301.6223(c)-1T(f) (emphases added); *cf. Walthall v. United States*, 131 F.3d 1289, 1296 (9th Cir. 1997) ("mere fact that the IRS possesses in its database the name and address of indirect partners does not mean that it has been 'furnished with' this information" so as to trigger IRS obligation to notify indirect partners of administrative proceedings under I.R.C. § 6223). Nor does the regulation give effect to the "[i]ncorporation by reference of information contained in another document previously furnished to the Internal Revenue Service."  Treas. Reg. §  301.6223(c)-1T(c).

For the foregoing reasons, we affirm the judgment of the tax court and remand for further proceedings.

*So ordered.*