# United States Tax Court

T.C. Memo. 2025-19

ALAN HAMEL AND ESTATE OF SUZANNE HAMEL, DECEASED,
ALAN HAMEL, SPECIAL ADMINISTRATOR,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent[1]

—————

Docket No. 20882-21.              Filed February 25, 2025.

—————

*Kenneth M. Barish* and *Steven Ray Mather*, for petitioners.

*Matthew R. Delgado* and *Heather L. Lampert*, for respondent.

—————

## SUPPLEMENTAL MEMORANDUM OPINION

WEILER, *Judge*: On August 8, 2023, respondent filed a Motion to Dismiss for Lack of Jurisdiction as to Penalties, and on September 22, 2023, he filed a Motion for Summary Judgment.[2] On September 22, 2023, Alan Hamel in his personal capacity, and as special administrator for the Estate of Suzanne Hamel (collectively, petitioners), filed a Motion for Summary Judgment, a Declaration by Clifton Lamb in Support of Motion for Summary Judgment, and a Memorandum in Support of Motion for Summary Judgment. On July 24, 2023, the parties also filed a First Stipulation of Facts.

—————

[1] This Opinion supplements our previously filed opinion *Hamel v. Commissioner*, T.C. Memo. 2024-62.

[2] Respondent also filed a Memorandum in Support of Motion for Summary Judgment on September 22, 2023.

**[\*2]**    On June 3, 2024, we issued our opinion in this case, *Hamel*, T.C. Memo. 2024-62, granting respondent's Motion to Dismiss for Lack of Jurisdiction as to Penalties, granting respondent's Motion for Summary Judgment, and denying petitioners' Motion for Summary Judgment.

On July 3, 2024, petitioners filed a Motion for Reconsideration of Findings or Opinion Pursuant to Rule 161[3] (Motion for Reconsideration). Petitioners' Motion for Reconsideration seeks reconsideration of *Hamel* principally on the basis of the effect of the U.S. Supreme Court decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) (overruling *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)). For the reasons below, we will grant petitioners' Motion for Reconsideration, in part. However, after reconsidering the matter, we reaffirm our decision in *Hamel* to grant respondent's Motion to Dismiss for Lack of Jurisdiction as to Penalties, to grant respondent's Motion for Summary Judgment, and to deny petitioners' Motion for Summary Judgment.

*Background*

We adopt the findings of fact set forth in *Hamel*, repeating such facts only as necessary for clarity and convenience.

*Discussion*

In *Hamel* we rejected petitioners' reading of section 6230(a)(2) and found Temporary Treasury Regulation § 301.6231(a)(6)-1T(a)(2) to be controlling, citing our decisions on the matter. *Manroe v. Commissioner*, T.C. Memo. 2020-16, at \*9; *Gunther v. Commissioner*, T.C. Memo. 2019-6, at \*8–15, *aff'd*, 789 F. App'x 836 (11th Cir. 2020); *see Highpoint Tower Tech. Inc. v. Commissioner*, 931 F.3d 1050, 1057–58 (11th Cir. 2019); *see also* I.R.C. § 6230(a)(1). Consistent with these decisions, we found we did not hold jurisdiction to consider section 6662 penalties in this proceeding, thereby granting respondent's Motion to Dismiss for Lack of Jurisdiction as to Penalties.

We also considered the parties' Cross-Motions for Summary Judgment and held that the periods of limitation for assessments of tax

---

[3] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*3]** attributable to any partnership item (or affected item) under section 6229(d) against petitioners as to Palm Canyon remain open. We further held that the Notices of Deficiency, which were issued to the Hamels on March 12, 2021, were valid. *Hamel*, T.C. Memo. 2024-62, at \*13.

On the basis of our precedent requiring strict compliance, we concluded that petitioners remained unidentified partners for purposes of section 6229(e) on or after March 12, 2020, since they have failed to comply with the foregoing specified regulatory requirements. *Hamel*, T.C. Memo. 2024-62, at \*12. Accordingly, we denied petitioners' Motion for Summary Judgment and granted respondent's Motion for Summary Judgment.

I.      *Rule 161 Motions Generally*

As we explained in *Estate of Quick v. Commissioner*, 110 T.C. 440, 441 (1998), *supplementing* 110 T.C. 172 (1998), "[t]he granting of a motion for reconsideration rests with the discretion of the Court, and we usually do not exercise our discretion absent a showing of unusual circumstances or substantial error." Reconsideration is generally inappropriate to allow for the "tendering [of] new legal theories," at least when the new theory could have been raised in prior proceedings. *Id.* at 441–42. But "an intervening change in the law can warrant the granting of . . . a motion to reconsider." *Intermountain Ins. Serv. of Vail, LLC v. Commissioner*, 134 T.C. 211, 216 (2010), *supplementing* T.C. Memo. 2009-195. Therefore, granting a motion for reconsideration may be appropriate to allow the Court to consider a new legal theory made viable only because of an intervening change in the law or precedent.

On the basis of the intervening change in precedent by the Supreme Court found in *Loper Bright* as raised by petitioners, we are inclined to reconsider and supplement some of our reasoning in *Hamel*. Thus, we will grant petitioners' Motion for Reconsideration, in part.

II.     *Petitioners' Arguments*

Petitioners first contend that the Supreme Court's *Loper Bright* decision undermines both our decision in *Gaughf Properties, L.P. v. Commissioner*, 139 T.C. 219 (2012), *aff'd*, 738 F.3d 415 (D.C. Cir. 2013), and the effect of it as precedent in this case. Petitioners argue that the information required by section 6229(e) was in the hands of (and actually used by) the IRS as early as July 22, 2004, and that Temporary Treasury Regulation § 301.6223(c)-1T goes beyond and is contrary to the

**[\*4]** requirements of section 6229(e) and is therefore invalid. Petitioners also contend that we incorrectly determined Temporary Treasury Regulation § 301.6231(a)(6)-1T "filled the gap" with a statement of IRS position regardless of whether that statement has legislative or rational support. We disagree with each of petitioners' arguments and will explain below.

III.  *Analysis*

Temporary Treasury Regulation § 301.6229(e)-1T indicates that a partner remains unidentified for purposes of section 6229(e) until identifying information is furnished as provided in Temporary Treasury Regulation § 301.6223(c)-1T. Petitioners challenge the requirements found in Temporary Treasury Regulation § 301.6223(c)-1T as going beyond the statutory requirements of section 6229(e); accordingly, our analysis on reconsideration focuses on this regulation.

In *Chevron*, 467 U.S. at 842–43, the Supreme Court adopted a two-part test to interpret statutes administered by federal agencies:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

(Footnotes omitted.)

The foregoing so-called *Chevron* test was applied and relied upon by this Court, and other courts, for years. The Supreme Court in *Loper Bright*, 114 S. Ct. at 2273, however, overruled *Chevron*.

Going forward, the Supreme Court has directed lower courts reviewing agency action to "exercise their independent judgment in

**[\*5]** deciding whether [the] agency has acted within its statutory authority." *Id.* Importantly, however, *Loper Bright* "d[id] not call into question prior cases that relied on the *Chevron* framework." *Id.* The Supreme Court explained:

> Mere reliance on *Chevron* cannot constitute a "'special justification'" for overruling such a holding, because to say a precedent relied on Chevron is, at best, "just an argument that the precedent was wrongly decided." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 266 (2014) (quoting *Dickerson v. United States*, 530 U.S. 428, 443 (2000)).

*Id.*

Accordingly, we reject petitioners' first contention, that the Supreme Court's decision in *Loper Bright* undermines our decision in *Gaughf Properties* and its effect as precedent in this case.

With respect to petitioners' second argument, we do acknowledge that we relied, in part, on *Chevron* when we previously held that Temporary Treasury Regulation § 301.6229(e)-1T was valid.[4] *See Gaughf Props.*, 139 T.C. at 240–49 (addressing the requirements of providing information to satisfy section 6229(e) and concluding that Temp. Treas. Reg. § 301.6223(c)-1T(b) applied, all information listed in paragraph (b)(3) was required, and Temp. Treas. Reg. § 301.6229(e)-1T is valid). In *Gaughf Properties*, 139 T.C. at 247–48, however, we found ambiguity with respect to section 6229(e) on the basis of Congress's use of the word "furnish."

Under today's precedent, a deferential and permissible interpretation of the statute no longer prevails simply because the Department of the Treasury (Treasury) offers it to resolve a perceived ambiguity. *See Varian Med. Sys. v. Commissioner*, No. 8435-23, 163 T.C., slip op. at 29 (Aug. 26, 2024) (citing *Loper Bright*, 144 S. Ct. at 2266, 2273). Therefore, in cases involving statutory ambiguity such as this one, "instead of declaring a particular party's reading

---

[4] While in *Gaughf Properties* the taxpayer challenge was to Temporary Treasury Regulation § 301.6229(e)-1T, and here the challenge is directed to Temporary Treasury Regulation § 301.6223(c)-1T(b), the two regulatory challenges are essentially the same since Temporary Treasury Regulation § 301.6229(e)-1T incorporates by reference the requirements found in Temporary Treasury Regulation § 301.6223(c)-1T(b). *See Gaughf Props.*, 129 T.C. at 246.

**[\*6]** 'permissible,'" we are to now "use every tool at [our] disposal to determine the best reading of the statute and resolve the ambiguity." *Loper Bright*, 144 S. Ct. at 2266. Our further analysis in *Gaughf Properties*, 139 T.C. at 247–48, confirms that section 6229(e) "does not clearly prohibit an agency from promulgating regulations which require information to be filed where the relevant statute provides that the information must be 'furnished.'"

Congress "often enact[s] . . . statutes" that authorize an agency "to exercise a degree of discretion." *Loper Bright*, 144 S. Ct. at 2263. Other statutes empower an agency to prescribe rules to "fill up the details" of a statutory scheme or leave that agency with appropriate flexibility. *Id.* (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 43 (1825)).[5] The Supreme Court states in *Loper Bright*:

> When the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits. The court fulfills that role by recognizing constitutional delegations, "fix[ing] the boundaries of [the] delegated authority," H. Monaghan, *Marbury* and the Administrative State, 83 Colum. L. Rev. 1, 27 (1983), and ensuring the agency has engaged in "'reasoned decisionmaking'" within those boundaries, *Michigan*, 576 U.S. at 750 (quoting *Allentown Mack Sales & Service, Inc. v. NLRB*, 522 U.S. 359, 374 (1998)); see also *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29

---

[5] The Supreme Court in *Loper Bright*, 144 S. Ct. at 2263, continued:

For example, some statutes "expressly delegate[]" to an agency the authority to give meaning to a particular statutory term. *Batterton v. Francis*, 432 U.S. 416, 425 (1977) (emphasis deleted). Others empower an agency to prescribe rules to "fill up the details" of a statutory scheme, *Wayman v. Southard*, 10 Wheat. 1, 43 (1825), or to regulate subject to the limits imposed by a term or phrase that "leaves agencies with flexibility," *Michigan v. EPA*, 576 U.S. 743, 752 (2015), such as "appropriate" or "reasonable."

(Footnote omitted.)

**[\*7]** (1983). By doing so, a court upholds the traditional conception of the judicial function that the APA adopts.

*Id.*

In reaching a conclusion on the validity of a regulation we may give "[c]areful attention to the judgment of the Executive Branch." *Id.* at 2273. The views of Treasury in this context "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Id.* at 2262 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). "The weight of such a judgment in a particular case," of course, "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* at 2259 (quoting *Skidmore*, 323 U.S. at 140); *see also Varian Med. Sys.*, 163 T.C., slip op. at 29–30. In *Gaughf Properties*, 139 T.C. at 246, we wrote:

> Section 301.6229(e)-1T, Temporary Proced. & Admin. Regs., *supra*, was issued pursuant to the authority section 7805 provides to the Commissioner. 52 Fed. Reg. 6779, 6780 (Mar. 5, 1987). Secondary authority for issuance of the regulation is found in section 6230(k), which provides: "The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this subchapter"; i.e., subchapter C of chapter 63, which contains sections 6221 through 6234.

(Footnote omitted).

Relying on the primary and secondary authorities granted by Congress in sections 7805(a) and 6230(k) for issuance of the regulation at issue, we found that the taxpayer's argument in *Gaughf Properties*, 139 T.C. at 246, challenging the regulation lacked merit.[6] After considering *Loper Bright*, we find no reason to alter our conclusion here in this case. For the Supreme Court has noted that courts should generally defer to and uphold Treasury regulations which implement a congressional mandate in some reasonable manner. *Nat'l Muffler*

---

[6] There is additional statutory support for the Commissioner's regulatory requirements in Temporary Treasury Regulation § 301.6223(c)-1T, found in section 6230(i), which provides: "Except as otherwise provided in this subchapter, each . . . furnishing of information, shall be filed or made at such time, in such manner, and at such place as may be prescribed in regulations."

**[\*8]** *Dealers Ass'n v. United States*, 440 U.S. 472, 476–77 (1979). We are to "look to see whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose." *Id.* at 477.

As referenced above, the Supreme Court has said federal agencies are required to engage in reasoned decisionmaking. *Michigan v. EPA*, 576 U.S. at 750 (citing *Allentown Mack Sales & Serv.*, 522 U.S. at 374).[7] "Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." *Id.* (quoting *Allentown Mack Sales & Serv.*, 522 U.S. at 374). It follows that agency action is lawful only if it rests "on a consideration of the relevant factors." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1975)).

In this case it is not difficult to conclude that Treasury engaged in some level of "reasoned decisionmaking" when deciding to promulgate Temporary Treasury Regulation § 301.6223(c)-1T. It was first published in a notice of proposed rulemaking (Notice) on April 18, 1986, 51 Fed. Reg. 13,231 (Apr. 18, 1986), along with several other temporary regulations, with the purpose to "clarify miscellaneous provisions related to the tax treatment of partnership items and [to] provide guidance to partners and partnerships affected" by the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324. 51 Fed. Reg. at 13,231. The Notice stated that Temporary Treasury Regulation § 301.6223(c)-1T was issued under sections 6223(c) and 6230(i) and (k). 51 Fed. Reg. at 13,235. The Notice called for written comments and stated that Treasury would entertain any requests for public hearing by June 17, 1986.[8] *Id.* at 13,231.

Although the Notice does not contain express reasoning for Temporary Treasury Regulation § 301.6223(c)-1T, the preamble to the Notice discusses the various temporary regulations contained therein. The preamble further states how Congress added sections 6221 through 6231 to the Code and called for consolidated proceedings to determine the tax treatment of "partnership items" at the partnership level. 51 Fed. Reg. at 13,321. The Notice also emphasizes the importance of the date on which a Notice of Deficiency, or other notice relating to a

---

[7] Petitioners do not specifically raise a "reasoned decisionmaking" challenge to Temporary Treasury Regulation § 301.6223(c)-1T; nevertheless, we will address the issue.

[8] Treasury received several comments on the proposed regulations; however, there were no requests for any public hearing. 52 Fed. Reg. 6779 (Mar. 5, 1987).

[*9] partnership proceeding, is mailed to the tax matters partner. Lastly, the Notice goes on to state that "a partner is not entitled to notice unless the partner is adequately identified at least 30 days before" the NOD, or similar notice, is mailed. *Id.* at 13,321–22.

Although we find section 6229(e) unclear, Congress has expressly delegated rulemaking authority to Treasury to promulgate by regulation the partnership information required under the Code. With respect to this rulemaking authority from Congress, we conclude Treasury has properly done so within its delegation of authority.[9] Accordingly, and after reconsideration, we remain unconvinced by petitioners' second argument and now expressly conclude that the best reading of section 6229(e) is consistent with the regulatory requirements of Temporary Treasury Regulation § 301.6223(c)-1T. We therefore reject petitioners' contention that Temporary Treasury Regulation § 301.6223(c)-1T goes beyond (or is contrary to) section 6229(e).

Lastly petitioners contend that we incorrectly upheld Temporary Treasury Regulation § 301.6231(a)(6)-1T when we declined their argument that this regulation is unlawful and contrary to a plain reading of sections 6221 and 6230. Petitioners contend we erroneously adopted *Chevron* deference when we concluded section 6230 directs the Secretary to "fill in the gap" and that the regulation is neither contrary to the statute nor otherwise unlawful. *Hamel*, T.C. Memo. 2024-62, at *7. We disagree.

Petitioners' challenge to this regulation is of no consequence, since our conclusion in *Hamel*—holding we lacked jurisdiction as to the penalties being challenged—rejected petitioners' reading of section 6230(a)(2) and the amendments to section 6221 under the Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 1238(a), 111 Stat. 788, 1026. *Hamel*, T.C. Memo. 2024-62, at *7–8. In *Hamel*, T.C. Memo. 2024-62, at *7, we said:

> Under a plain reading of the newly enacted wording, the effect of the amendment was to remove partnership-

---

[9] As the Supreme Court has said, in the cases that come before us "the question that matters [is]: Does the statute authorize the challenged agency action?" *Loper Bright*, 144 S. Ct. at 2269. In answering this question, we may not follow Treasury's guidance if it contradicts the statutory text. *See, e.g.*, *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1485 (2021). Here, however, we conclude Temporary Treasury Regulation § 301.6223(c)-1T is consistent with our reading of section 6229(e). *See Gaughf Props.*, 139 T.C. at 248.

**[\*10]** item penalties from deficiency procedures effective for partnership tax years ending after August 5, 1997. *See Domulewicz v. Commissioner*, 129 T.C. 11, 21–22 (2007), *aff'd in part, remanded in part sub nom. Desmet v. Commissioner*, 581 F.3d 297 (6th Cir. 2009); *see also* H.R. Rep. No 105-220 (1997) (Conf. Rep.), *reprinted in* 1997-4 C.B. (Vol. 2) 1457. We find the foregoing text and change to undermine petitioners' argument and confirm our prior holdings. *See Domulewicz*, 129 T.C. at 22.

Our foregoing statutory analysis holds true, notwithstanding the decision in *Loper Bright*. Accordingly, we see no benefit in reconsidering a challenge of Temporary Treasury Regulation § 301.6231(a)(6)-1T(a)(2), and we will deny petitioners' Motion for Reconsideration, in part, as to their last argument.

IV.   *Conclusion*

Considering the foregoing, we reaffirm *Hamel*, and the granting of respondent's Motion to Dismiss for Lack of Jurisdiction as to Penalties, the granting of respondent's Motion for Summary Judgment, and the denying of petitioners' Motion for Summary Judgment. We have considered all the arguments that the parties have made, and to the extent they are not addressed herein, we find the arguments to be moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate order will be issued.*